**BOWLES, Administrator, OPA, v. SIMON.**

No. 8527.

Circuit Court of Appeals, Seventh Circuit.

Nov. 9, 1944.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The Administrator of the Office of Price Administration filed in the District Court for the Southern District of Indiana a complaint which alleged that, in violation of the rental regulations promulgated by the Administrator pursuant to authority granted by Congress, the defendant, Ben C. Simon, a landlord in the Indianapolis Defense Rental Area, has raised the rent on certain apartments, has failed to furnish after the freeze date the same essential services as those provided on the freeze date, and without permission of the Administrator, has given notice to tenants that they would have to surrender possession of their apartments. The defendant having filed an answer, the court heard the case and formulated findings of fact and conclusions of law. The court concluded "that the equities are with the defendant; that the injunction should be denied * * *." From a judgment dismissing the complaint for want of equity the Administrator has appealed.

The defendant's property consists of fourteen apartments and five unattached garages, all on the same piece of land. As to the garages, the court found "that the rental charged for such garages is not a part of the apartment rental and such garages are only available to such tenants as may be selected by the defendant whenever there is a vacancy. That prior to July 1, 1942, the defendant charged a monthly rental of $2.50 for the use of a garage; that subsequent to July 1, 1942, the defendant raised this rental to $4. That these garages were individual units and were not connected with or attached to any of the fourteen apartments; that the garages were rented to the tenants who desired them and who were acceptable to the defendant; that there was no condition in the rental agreement of the apartments which entitled the tenant to a garage or which in any manner affected the right of the defendant to select the individuals to whom the garages would be rented; that no apartment always had garage facilities, a garage being rented first with one apartment and then, when the tenant of that apartment no longer desired a garage, with another apartment; that the defendant was not under any obligation to furnish a

Thomas I. Emerson, Fleming James, Jr., and David London, all of Washington, D. C., John E. Scott and Frank W. Duggan, both of Indianapolis, Ind., Morton Abrahams, Senior Atty., OPA, of Washington, D. C., and A. D. Ruegsegger, Enforcement Executive, OPA, of Cleveland, Ohio, for appellant.

Omer S. Whiteman, of Indianapolis, Ind., for appellee.

garage with any certain apartment, nor was the tenant of any apartment under any obligation to rent a garage. That the rental of said garage does not come within the purviews of Maximum Rent Regulation No. 27, and that the increased rent of said garages is not to be considered in determining the equities of this action."

[1] Master "Rent Regulation for Housing" (8 F.R. 7322):

* * * * * * *

Sec. 2. Prohibition Against Higher Than Maximum Rents.

(a) General Prohibition. Regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, no person shall demand or receive any rent for or in connection with the use or occupancy on and after the effective date of regulation of any housing accommodations within the Defense-Rental Area higher than maximum rents provided by this regulation; and no person shall offer, solicit, attempt, or agree to do any of the foregoing. Lower rents than those provided by this regulation may be demanded or received. * * *

Sec. 3. Minimum Services, Furniture, Furnishings, and Equipment. Except as set forth in section 5 (b), every landlord shall, as a minimum, provide with housing accommodations the same essential services, furniture, furnishings, and equipment as those provided on the date determining the maximum rent, and as to other services, furniture, furnishings, and equipment not substantially less than those provided on such date. * * *

Sec. 5. (a) Grounds for Increase of Maximum Rent. Any landlord may file a petition for adjustment to increase the maximum rent otherwise allowable, only on the grounds that: * * *

(3) Substantial increase in services, furniture, furnishings or equipment. There has been a substantial increase in the services, furniture, furnishings or equipment provided with the housing accommodations since the date or order determining its maximum rent. * * *

(8) Substantial increase in occupancy. There has been, since the maximum rent date, either (i) a substantial increase in the number of subtenants or other persons occupying the accommodations or a part thereof under a rental agreement with the tenant, or (ii) a substantial increase in the number of occupants, in excess of normal occupancy for that class of accommodations on the maximum rent date, or (iii) an increase in the number of occupants over the number contemplated by the rental agreement on the date determining the maximum rent, where the landlord on that date had a regular and definite practice of fixing different rents for the accommodations for different numbers of occupants. * * *

(b) Decreases in Minimum Services, Furniture, Furnishings and Equipment.
(1) Decreases prior to effective date. If, on the effective date of regulation, the services provided for housing accommodations are less than the minimum services required by section 3, the landlord shall either restore and maintain such minimum services or, within 30 days * * * after such effective date, file a petition requesting approval of the decreased services. If, on such effective date (or on December 1, 1942, where the effective date of regulation is prior to that date), the furniture, furnishings or equipment provided with housing accommodations are less than the minimum required by section 3, the landlord shall, within 30 days after such date, file a written report showing the decrease in furniture, furnishings or equipment.

(2) Decreases after effective date. Except as above provided, the landlord shall, until the accommodations become vacant, maintain the minimum services, furniture, furnishings, and equipment unless and until he has filed a petition to decrease the services, furniture, furnishings, or equipment and an order permitting a decrease has been entered thereon; however, if it is impossible to provide the minimum services, furniture, furnishings, or equipment he shall file a petition within 10 days after the change occurs. When the accommodations become vacant the landlord may, on renting to a new tenant, decrease the services, furniture, furnishings, or equipment below the minimum; within 10 days after so renting the landlord shall file a written report showing such decrease. * * *

Sec. 13. Definitions. (a) When Used in This Regulation the Term:

(6) "Housing accommodations" means any building, structure, or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling

The Administrator first contends that the District Court erred in finding that the garages were not part of the housing accommodations and in concluding that the rental of garages does not come within the purview of the rent regulations.[1]

Since the promulgation of these rent regulations, the Administrator has issued sev-

eral interpretive bulletins construing the words "services" in the regulations as including the use of a garage. It is the contention of the Administrator that such interpretations are controlling. In his brief, counsel for the Administrator says: "These administrative rulings or interpretations are controlling. Even in the case of a statute, the construction placed upon it by the agency charged with its administration is given great weight by the courts, * * * and where the document interpreted is the agency's own regulation, almost conclusive effect is given to the administrative interpretation."

We think counsel's zeal and enthusiasm for the sanctity of such interpretations are hardly warranted. This doctrine would relegate the statutes of Congress to an inferior position unjustified even in these times when the compulsion of an emergency compels us to clothe administrative agencies with extraordinary powers.

We do not accept the Administrator's view that he may promulgate a regulation and then place on it an interpretation which becomes controlling on the courts. The Administrator has not grown to any such stature. The courts may consider his interpretations and follow them, if correct, but the court is not bound to follow them. Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 325, 53 S.Ct. 350, 77 L.Ed. 796; Bowles v. Nu Way Laundry Company, 10 Cir., 144 F.2d 741.

We think the District Court had a right to determine the meaning of these regulations for itself, although it could not, and did not, undertake to pass upon their validity, since that authority resides in the Emergency Court of Appeals and in the Supreme Court. Section 204, Emergency Price Control Act 1942, 50 U.S.C.A. Appendix, § 924. Having made its own interpretation, the District Court was justified in rejecting the Administrator's interpretation of these regulations. The garages were not appurtenant to, or usually rented with, any specific property, but had always been rented separately at a fixed price. Under such circumstances, it is an erroneous interpretation of the regulation to say that a tenant who, after the freeze date, rents a garage which was not rented along with the apartment before the freeze date, should be charged only the rent for the apartment alone, and that a petition to increase the rent must be filed with the Administrator on the ground that the services connected with the apartment have been increased. The services were not increased. An additional property or tenement was rented, just as if the tenant had rented an additional apartment. For this additional property or separate tenement, the lessor was entitled to charge the $2.50 per month rental which the District Court found he had been receiving on the freeze date. In spite of this finding, the District Court stated that the defendant was justified in charging $4 per month for this garage property—more than he was getting on the freeze date. This, we think, was error. The Court recognized the correct rule but misapplied it. Such a misapplication of the law to the facts is in itself an abuse of discretion. Hanover Star Milling Co. v. Allen & Wheeler Co., 7 Cir., 208 F. 513, 523.

This error, considered together with the defendant's uncooperative and hostile attitude toward the Price Control Act, its enforcement and administration, his repeated violations of the regulations governing rent increases and minimum services, and his flagrant disregard for all warnings of the Administrator, constrains us to hold that the District Court abused its discretion in refusing this injunction. An injunction will not only insure better compliance with the Act, but seems essential to make this defendant comply with the Act. Bowles v. Nu Way Laundry Company, supra; Bowles v. Montgomery Ward & Co., 7 Cir., 143 F.2d 38, 43. We think that this is true, even though the District Court generously found, in the face of defendant's hostility and repeated violations, that he will not commit future violations.

The judgment is reversed and remanded

purposes, together with all privileges, services, furnishings, furniture, equipment, facilities and improvements connected with the use or occupancy of such property.

(7) "Services" includes repairs, decorating and maintenance, the furnishing of light, heat, hot and cold water, telephone, elevator service, window shades, and storage, ktichen, bath, and laundry facilities and privileges, maid service, linen service, janitor service, the removal of refuse and any other privilege or facility connected with the use or occupancy of housing accommodations.

with directions to the District Court to re-state its conclusions of law in favor of the appellant and to grant the injunction prayed for in the complaint.