**WHITE v. BOWLES, Price Administrator.**

**No. 201.**

United States Emergency Court of Appeals.

Heard at St. Louis June 9, 1945.

Filed July 6, 1945.

Before MARIS, Chief Judge, and MA-GRUDER and McALLISTER, Judges.

Ray E. White, in pro. per.

Harry H. Schneider, Atty., Office of Price Administration, of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, Warren L. Sharfman, Chief, Court Review Rent Branch, and Isidore Bassoff, Atty., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

MARIS, Chief Judge.

The complainant is the owner of an apartment building in St. Louis, Missouri. In December, 1942 he obtained the approval by the War Production Board and the Federal Housing Administration of an application for preference rating on material to be used in remodeling the structure. In his application the complainant stated that the structure to be remodeled was a "3 Story-apartment building arranged for hotel and housekeeping apartments" and that the materials were to be used for the "installation of additional kitchen and baths. Separation of units for special use of war workers. No lumber will be needed. No gas, water or sewer connections necessary. Electric needs rearrangement only." He also stated that the remodeling project would provide for six additional units of 3½ rooms each at a shelter rental (including services) of $40 for each unit. With the materials obtained under this priority rating the complainant remodeled the structure so that in place of original four apartments of five rooms each it now contains eight apartments of which four contain three rooms each and four two rooms each.

These housing accommodations were first rented in March and April, 1943 at $50 per month for each of the three-room apartments, at $42.50 each per month for two of the two-room apartments and at $40 each per month for the two remaining two-room apartments. These rentals, it is alleged by the complainant, were approved by the War Production Board and the Federal Housing Administration, both agencies of the United States. The Administrator does not deny this. The Rent Director of the St. Louis Defense-Rental Area found that these rents were higher than those generally prevailing for comparable housing accommodations in the area on March 1, 1942, the maximum rent date for that area. He decreased the max-

imum rents to $37.50 per month for the 3-room units and $32.50 per month for the 2-room units.

The complainant contends that his structure is "priority constructed housing" and that consequently the maximum rents which he may charge for his apartments are fixed by Section 4(f) of the Rent Regulation for Housing.[1] That section as originally promulgated provides that the maximum rent shall be "For housing accommodations constructed with priority rating from the United States or any agency thereof for which the rent has been heretofore or is hereafter approved by the United States or any agency thereof, the rent so approved, but in no event more than the rent on the maximum rent date, or, if the accommodations were not rented on that date, more than the first rent after that date."

The Administrator held that the maximum rents were fixed by Section 4(e) of the regulation, which provides in part that "Maximum rents (unless and until changed by the Administrator as provided in section 5) shall be : * * * For * * * housing accommodations changed on or after such effective date so as to result in an increase or decrease of the number of dwelling units in such housing accommodations * * * the first rent for such accommodations after the change * * *."

In making the decrease objected to by the complainant the Administrator purported to act under Section 5(c) (1) of the regulation. That section provides, inter alia, that "The Administrator at any time, * * * may order a decrease of the maximum rent otherwise allowable, only on the grounds that: The maximum rent for housing accommodations under paragraph (e) * * * of section 4 is higher than the rent generally prevailing in the Defense-Rental Area for comparable housing accommodations on the maximum rent date." It is conceded that maximum rents fixed under Section 4(f) are not subject to reduction by the Administrator under Section 5(c) (1), and that if the right to reduce the rents is to be sustained it must be because the complainant's apartments are subject to Section 4(e) of the regulation.

The Administrator contends that Section 4(f) applies only to newly constructed buildings and that it does not apply to the alteration or remodeling of old buildings. In this connection he calls attention to and relies upon his official interpretation (No. 48) of Section 4(f) issued September 23, 1942,[2] which was as follows:

"Assume in each case that the maximum rent date is March 1, 1942, and the effective date of the Regulation is July 1, 1942.

"1. L, the owner of a large single family house, decides to divide it into three apartments. The alteration is effected by the addition of partitions and by changing two of the downstairs rooms into bathrooms and one of the upstairs rooms to a kitchen. To obtain materials necessary for these changes L secures a priority or preference rating order from the War Production Board. In granting the order the War Production Board approves a rental of $50 per month for each of the new units. The alterations are completed in April 1942, and on May 1 L rents the new units at $50 per month for each unit. The rent generally prevailing in the area for comparable accommodations on March 1, 1942 was $40 per unit.

"The maximum rents for the new dwelling units are established under Section 4 (d) (2) of the Housing Regulations. The maximum rent for each unit is thus $50 per month, the first rent after the change. These rents, however, may be decreased by the Rent Director under Section 5(c) (1). The rent is not determined in this case under Section 4(f), since the alterations do not constitute construction within the meaning of this term as used in that Section. If L is unwilling to proceed with the alterations without knowing in advance how much rent he may charge for the new units, the Rent Director should give an advance opinion as to the amount chargeable in accordance with the procedure suggested in Part II of Policy Memorandum No. 5.

"2. L, the owner of a house, builds an annex thereto which contains a new dwelling unit. To obtain the necessary materials, L secures a priority or preference rating order from the War Production Board. In granting the order the War

---

[1] 8 F.R. 7322, 7324; effective for the St. Louis Defense-Rental Area July 1, 1942.

[2] See Pike and Fischer, OPA Service, Page 200: 1311, 1312.

410

Production Board approves a rental of $50 per month for the new unit. The annex is completed in April 1942, and on May 1 L rents the new unit at $50 per month. The rent generally prevailing in the area for comparable accommodations on March 1, 1942 was $40 per month.

The maximum rent for the new unit is $50 per month, the amount approved by the War Production Board. The annex constitutes "housing accommodations constructed with priority rating" within the meaning of Section 4(f)."

■ An administrative construction of a regulation whose meaning is in doubt affords the court guidance in interpreting the regulation. In Bowles v. Seminole Rock & Sand Co., 1945, 65 S.Ct. 1215, 1217, the Supreme Court said: "The problem in this case is to determine the highest price respondent charged for crushed stone during March, 1942, within the meaning of Maximum Price Regulation No. 188. Since this involves an interpretation of an administrative regulation a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. The intention of Congress or the principles of the Constitution in some situations may be relevant in the first instance in choosing between various constructions. But the ultimate criterion is the administrative interpretation which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation. The legality of the result reached by this process, of course, is quite a different matter. In this case the only problem is to discover the meaning of certain portions of Maximum Price Regulation No. 188. Our only tools, therefore, are the plain words of the regulation and any relevant interpretations of the Administrator."

See also to the same effect Bowles v. Nu Way Laundry Co., 10 Cir., 1944, 144 F.2d 741, 746, and Walling v. Cohen, 3 Cir., 1944, 140 F.2d 453, 455.

■ The Administrator's interpretation of Section 4(f) so as to restrict it to new construction cannot be said to be plainly erroneous or inconsistent with the regulation. It is, after all, the duty of the Price Administrator to fix maximum rents for housing accommodations in defense rental areas. Although in Section 4(f) of the regulation the Administrator has set out circumstances under which he is willing to give effect to the judgment of another agency of the United States it is wholly within his rights to restrict this exception to as narrow a scope as he deems necessary. We think that he properly interpreted Section 4(f) and that as so interpreted the complainant's apartments do not fall within it. We conclude that the maximum rents were fixed under Section 4(e) and were subject to reduction by the Administrator under Section 5(c) (1).

■ This brings us to the second question raised by the complainant which is that the Administrator erred in finding that the first rents which the complainant charged for the apartments in question were higher than the rents generally prevailing for comparable apartments in the area on March 1, 1942, the maximum rent date, and in directing the reduction of those rents. The question thus raised is a purely factual one as to which the Administrator's findings are conclusive if supported by substantial evidence. Rabkin v. Bowles, Em.App., 1944, 143 F.2d 600; Wylie v. Bowles, Em.App., 1945, 147 F.2d 143; Sirianni v. Bowles, Em.App., 1945, 148 F.2d 343. Our examination of the transcript satisfies us that the Administrator's findings in this regard are abundantly supported by the evidence. Indeed it appears that the complainant has failed to offer any substantial evidence to controvert them. We, therefore, cannot hold that the Administrator erred in directing the reduction of the rents in question.

The complainant in his protest and in his complaint has raised a number of objections to the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., and to the Rent Regulation for Housing. We have considered these objections and find them to be wholly without merit. Since they have all been ruled against the complainant by previous decisions of this court and of the Supreme Court it would serve no useful purpose to discuss them further here.

A judgment will be entered dismissing the complaint.