**FLEET–WING CORPORATION v. CLARK.**
No. 441.

United States Emergency Court of Appeals.
Heard at Cleveland Jan. 26, 1948.
Decided Feb. 20, 1948.

H. V. E. Mitchell, of Cleveland, Ohio (McAfee, Grossman, Taplin, Hanning, Newcomer & Hazlett, of Cleveland, Ohio, on the brief), for complainant.

Israel Convisser, Atty., Dept. of Justice, of Washington, D. C. (Tom C. Clark, Atty. Gen., T. Vincent Quinn, Asst. Atty. Gen., and Floyd L. Cook and Charles G. Mulligan, Attys., Dept. of Justice both of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

LINDLEY, Judge.

Complainant, a wholesale supplier of gasoline to jobbers in various cities in Indiana and Michigan, having unsuccessfully protested the provisions of MPR-88, Section 5, and particularly subsection 5.2(b) as interpreted, filed its complaint in this court, asserting that an interpretation of subsection 5.2(b) of MPR-88 issued May 12, 1945 by the Chief Counsel of the Petroleum Branch of the Office of Price Administration, known as OPA Interpretation 52, has no application to complainant or, in the alternative, that if it applies to complainant, it renders the regulation arbitrary, discriminatory and therefore invalid.

█ Though there is no enforcement action pending, complainant, in order to avoid litigation, in accord with the permissive provisions of the Act, 50 U.S.C.A.Appendix, § 901 et seq., has deposited in escrow with the Government funds covering its entire alleged liability for over-ceiling sales. Consequently, we think the cause is not moot and that we have jurisdiction.

█ We believe also that we have jurisdiction to pass upon the interpretation of the regulation with which we are con-

cerned. "We must pass upon the question whether the provisions * * * do mean what the Administrator says they mean before we can consider whether those provisions must be held to be invalid." Alan Levin Foundation v. Bowles, Em.App., 152 F.2d 467, at page 470. The scope of our authority in this respect is more specifically defined in Collins et al. v. Porter, 328 U.S. 46, at page 49, 66 S.Ct. 893, 90 L.Ed. 1075, wherein the Supreme Court announced that if a particular contention comes before this court through a protest proceeding under Section 203(a), 50 U.S. C.A.Appendix, § 923(a) as is the case here, we must adjudicate the issues of validity, applicability and interpretation, and that, in the event we find the regulation inapplicable, and such decision has been made before judgment is entered in an enforcement court, our decision is binding upon the latter tribunal. As we read the opinion, if an enforcement court, having jurisdiction of the parties, has determined the applicability and interpretation of a regulation by an adjudicative decision, then, in a later hearing of a case involving the same parties, we are bound by that adjudication, but if no such judgment has been entered and it is contended before us that the Administrator has so interpreted the regulation as to render it invalid, then we must pass upon the meaning of the regulation before we can reach the question of validity. See Alan Levin Foundation v. Bowles, supra. Thus we said, in Conklin Pen Co. v. Bowles, Em.App., 152 F.2d 764, 766; "A case filed in this court under Section 204(a) [50 U.S.C.A.Appendix § 924 (a)] is a judicial review of the Administrator's action in denying the protest. It would be strange indeed if in such a proceeding the reviewing court were bound by the determination of the officer whose action is being reviewed as to the meaning of his regulation or order. For those acts have the force of law and their construction involves a question of law just as much as does the interpretation of a statute. Moreover, it is a question which may involve the standing of the complainant to maintain his suit." See also Collins v. Fleming, Em.App., 159 F.2d 426; Van Der Loo v. Porter, Em.App., 160 F.2d 110; Curtiss Candy Co. v. Clark, Em.App., 165

F.2d 791. We conclude, therefore, that, in order to afford complainant its day in court, we must, under the facts of this case, when considering whether the regulation is valid, first determine just what it says and means; in other words, what its proper construction or interpretation is. Only after we have determined its true meaning and intent are we in a position to determine its validity.

■ In this task of interpretation, "the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation. * * * Our only tools, therefore, are the plain words of the regulation and any relevant interpretations of the Administrator." Bowles v. Seminole Rock & Sand Co., 325 U.S., 410, 411, at page 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700. Though the interpretation of the Administrator is not controlling (Bowles Admr. v. Simon, 7 Cir., 145 F. 2d 334) it is entitled to great weight and, unless arbitrary and unreasonable, must be sustained. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 411, 65 S.Ct. 1215, 89 L.Ed. 1700; Bowles v. Wheeler, 9 Cir., 152 F.2d 34; White v. Bowles, Em. App., 150 F.2d 408.

■ Briefly the facts are that complainant supplies gasoline to one jobber in each of some 19 communities located in Indiana and Michigan. We are concerned here only with the maximum price fixed for its sales in Fort Wayne. The provision of the regulation applicable to complainant, 5.2(c), provides that the maximum price for each seller at any delivery point shall not exceed the price charged at that point by him on the last sale of the same product to a purchaser of the same class within 60 days prior to October 15, 1941. From August 15, 1941 until September 30, 1943 complainant's prices to Indland Oils, Inc., its jobber at Fort Wayne, were $0.0817 per gallon of regular gasoline and $0.0942 per gallon of ethyl gasoline. After October 1, 1943, its delivery price to the jobber was increased $\frac{1}{4}$ cent per gallon to $0.0842 per gallon of regular and $0.0967 per gallon of ethyl gasoline. Complainant made deliveries to no other purchaser in Fort Wayne but did, during the base period and for two years thereafter, deliver gasoline to some 18 other

customers, each at a different place, at certain billing prices, 13 of which were lower than those at Fort Wayne. In view of the provisions of Section 5.2(c), it is clear that, in the absence of circumstances excepting complainant from its terms, complainant's maximum prices were those charged at Fort Wayne by it in the last sale to its jobber in the 60-day period prior to October 13, 1941, or $0.0817 per gallon of regular gasoline and $0.0942 per gallon of ethyl gasoline. The subsection is clear; its terms specific and its meaning beyond dispute.

Complainant insists, however, that during the base period all jobbers in Fort Wayne, including the one purchasing from complainant and those purchasing from other wholesale suppliers, were engaged in a price war which rendered its sales in that community during that period abnormal and of such extraordinary and unusual character as to impel a finding that the regulation is arbitrary and discriminatory when applied to its transactions in Fort Wayne.

Complainant relies upon Section 5.2(b) of MPR-88. That section, however, has to do only with the definition of "a purchaser of the same class," as its title plainly denotes. It reads: "Purchaser of the same class, as used in sections 5.2 and 5.3, refers to the practice adopted by the seller in setting different prices for a commodity for sales to purchasers performing different functions (for example, refiner; jobber; distributor; commercial, industrial or private consumer; service station; tank car dealer, divided or undivided tank wagon dealer; etc.), or for purchasers performing the same function but located in different areas or buying in different quantities or grades or under different conditions of sale. Price is prima facie evidence but not conclusive evidence to be considered in determining if a purchaser belongs to a particular class; however, a lower price to a particular purchaser which was to meet competition and otherwise was inconsistent with the seller's practice, in setting the same price to the particular purchaser and one or more other purchasers, shall neither result in placing the particular purchaser in a lower price class nor be considered in determining a seller's maximum price."

Complainant's position is that the terms of this subsection were such as to bring its transactions in Fort Wayne within an exception to the provisions of subsection 5.2 (c), that is, that, though sales prices are prima facie evidence that purchasers are in the same class, a lower price to a particular customer to meet competition and otherwise inconsistent with the seller's practice in selling to one or more other customers shall result in neither placing the particular purchaser in a lower class nor be considered in determining a seller's maximum price. It is largely upon complainant's interpretation of and reliance upon these provisions that its claim turns.

General Counsel for the Office of Price Administration, on May 12, 1945, many months before the alleged violation concerned occurred, issued an interpretation which in effect was approved by the Board of Review and the Administrator, reading: "In Section 5.2(b) the latter portion, which provides for disregarding of certain sales in determining maximum prices, has no effect in a case where at a particular delivery point a seller had only one purchaser of a particular class." It is clear that subsection 5.2(c) controls unless it can be said as a matter of law that Section 5.2(b) affords complainant relief.

We have observed that 5.2(b) is merely a definition or explanation of the phrase "purchasers of the same class." We are not justified in drawing from its language any inference that it was intended to apply where there was but one purchaser, for it contemplated only definition of a standard for determination of whether multiple purchasers at a given point were in the same class. In view of the plain language of 5.2(c) that the maximum prices to any purchaser at any given point of delivery shall be the prices existing during the base period, and in view of the further fact that 5.2 (b) was not concerned with establishment of maximum prices for any purchaser but only with the determination of what constitutes purchasers of the same class, we think that subsection 5.2(b) is wholly irrelevant to the issue presented to us, which is whether the complainant's maximum prices were reasonably fixed by a freeze-type

regulation at the prevailing prices at the delivery point during the base period. We believe further that the provisions of 5.2 (b) were intended, as the Administrator has said, to apply in situations where a seller had made multiple sales during the base period at a given delivery point to various purchasers of the same class. In such a situation, if the last two of a greater number of sales were made because of competitive reasons at reduced prices which were inconsistent with the seller's practice, then 5.2 (b) would become effective and the seller would have the right to eliminate the last two sales as abnormal, in determining the similarity of the class of purchasers or in determining the maximum price representative of the base period. Inasmuch as all of complainant's sales in Fort Wayne during the entire base period were at the same prices, subsection 5.2 (b) has no relevancy and subsection 5.2 (c) controls.

■ Complainant argues in this respect that the language of subsection 5.2 (b) "is equally applicable to a comparison of the price of a petroleum seller to customers of the same general class in different cities as it is to a comparison of prices to customers of the same general class in the same city." But obviously subsection 5.2 (c) clearly determined the maximum price by the sales made at the local point of Fort Wayne and prices at other places in Indiana and Illinois are immaterial. The controversy in this respect arises from the fact that the Administrator has fixed the minimum price of every supplier who sells at a certain point according to his price at that place without reference to what his price may be at other places, while, on the other hand, complainant insists that the Administrator, in writing subsection 5.2 (c), should have provided for consideration of prices to similar purchasers in other communities instead of freezing prices as they prevailed during the base period in the respective communities. Complainant claims further that 5.2 (b) has this effect, but we have seen that such was not its intent. In the final analysis, complainant's position is that the Administrator acted arbitrarily and discriminatorily in failing to take into consideration prices in other communities. But it is perfectly obvious, we think, that prices in different communities may differ because of variant circumstances and that it is beyond our power, in the absence of any evidence to show the necessity of such action, to announce that the Administrator, in order not to have acted arbitrarily or capriciously, must have given consideration to them.

■ However, we should observe in this connection that had the Administrator considered the prices to similar purchasers located in the 18 other communities it supplied, complainant would not have benefitted, for its maximum price as fixed by 5.2 (c) of $0.0817 per gallon at Fort Wayne is above the base period sales price at 13 of the other 18 communities served by complainant. Those prices vary from $0.0817 per gallon for regular gasoline at Fort Wayne downward, the sales price in other places during the base period running as low as $0.0780 per gallon. To no jobber at any of the 18 points other than Anchor Oil Company which was supplied only for a brief period, was the billing price of complainant in the base period as high as it was at Fort Wayne, with two exceptions, where the prices were $0.0827 and $0.0842. Thus, if complainant's dollar and cent maximum prices had been fixed as result of consideration not only of its billing price in Fort Wayne but also those at 18 other points, complainant's maximum price would have been lower and not higher. Indeed, complainant's own schedule of billing prices shows that its prices at Fort Wayne after October 1, 1943, when complainant raised the price of gasoline ¼ cent per gallon, were higher than any of its sales prices in any of the other communities with the exception of the one at North Manchester, which was exactly the same as that at Fort Wayne. Consequently, on complainant's own evidence, it is perfectly obvious that had the Administrator adopted complainant's suggestion that its sales price in other communities should have been considered as well as those in Fort Wayne, that consideration would have resulted in a lower maximum price at Fort Wayne than elsewhere, for the sales price of which complaint is made is substantially higher than that in each of 17 of the other 18 communities. This would seem to rebut completely the assertion that it was arbitrary and capricious

upon the part of the Administrator to consider only the Fort Wayne price. Of course, it is not within our function, in determining the validity of a maximum price, to weigh conflicting evidence. Absar Realty Co. v. Bowles, Em. App., 149 F.2d. 654; Wylie v. Bowles, Em. App., 147 F.2d. 143.

■ Complainant's objection is grounded upon its claim that it had a custom of fixing its billing price in each community at 2¢ a gallon less than the tank-wagon price in the community. The evidence discloses that this practice had been followed in Michigan and that complainant was endeavoring to procure its adoption in Indiana but that, out of 19 customers, some four or five exceptions to the practice existed. But, irrespective of whether such had become complainant's method of fixing its prices, the Administrator was not bound to approve it, for the reason that, had he done so, he would thereby have officially endorsed tank-wagon prices as a measure of the supplier's price to the wholesaler. In other words, he was not bound to adhere to that particular formula in determining the maximum price. Within his administrative discretion he chose the dollar and cent freeze-type method, to which we have repeatedly given approval.

■ Complainant complains further that the regulation, when interpreted in this light, unlawfully discriminates against in that it fails to make specific provision for a seller like complainant and prevents it from applying a uniform price formula to all its customers wherever located. It is rather difficult to follow complainant's argument in this respect. We have observed the contention that the regulation should have fixed some other price formula and have found no reason for adopting it. And we find no evidence that other sellers subject to the same maximum prices were permitted to take into consideration base period sales at other points or that other sellers were permitted to escape their maximum prices fixed by the freeze-type regulation. Indeed, there is no evidence that the effect of the regulation upon complainant was any more harsh than that upon any other seller, that any supplier has benefitted because he had more than one purchaser at a delivery point or that other suppliers were free to charge anything

more than their base period prices. Indeed, it seems clear that if other suppliers governed by 5.2 (c) made sales to purchasers at prices above their base period prices, they did so in violation of the regulation.

Nor do we think the evidence is such as to show that the situation at Fort Wayne compelled the Administrator to find that the ceilings fixed there resulted in an abnormally low price for complainant at that point. Under the complainant's own evidence, as we have seen, its price at Fort Wayne was higher than that at most other places during the base period, and after complainant increased its price $\frac{1}{4}$ cent per gallon, its price became still higher than prevailing prices at other points. We find no fact or circumstance indicating discrimination against complainant. Indeed, there is no evidence that all suppliers at Fort Wayne were not treated in exactly the same manner and subjected to the same maximum prices.

■ Complainant must fail, we think because of another reason. What it really desires is reconsideration and adjustment of the order freezing its prices at Fort Wayne at its prices during the base period. The essence of its complaint is that the Administrator, in fixing certain maximum prices, should have considered what it alleges to be abnormal conditions at Fort Wayne. As we remarked in Van Der Loo v. Porter, Em. App., 160 F.2d 110, the Emergency Price Control Act, Section 2 (c), 50 U.S.C.A. Appendix, § 902(c), provides that the Administrator may include provision for such adjustment as in his judgment is necessary or proper. To effectuate this congressional suggestion, provision for adjustment is made by the procedural regulations of the Office of Price Administration (8 F.R. 3003). Thus, Section 1300.9 provides that any person subject to maximum price regulation may apply for adjustment pursuant to procedure prescribed. Section 1300.17 provides for review of denial of such an application, and Section 1300.19 that any applicant, if adjustment has been denied, may file a protest against the order of denial. Under the Act, in case of denial of the protest, complainant has the right to file its complaint in this court attacking the validity of the order denying adjustment. By virtue of these remedial provisions, complainant had an ad-

ministrative remedy, which it has failed to pursue. As we said in Chippewa County Co-operative Dairy v. Clark, Em.App., 163 F.2d 753,. this remedy was part of complainant's proper proceeding for relief. In such a hearing it could have presented directly the evidence bearing upon its contentions that the maximum price fixed for Fort Wayne was an unduly or abnormally low one. Its failure to pursue that remedy, we think, is fatal to its later application attacking the validity of the regulation, in so far as the later protest attempts to raise questions of fact as to fairness or unfairness or as to arbitrary action or lack of arbitrary action by the Administrator in fixing complainant's maximum price in Fort Wayne.

 In Van Der Loo v. Porter Em. App., 160 F.2d 110, 113, where we were confronted by a contention that the Administrator had been arbitrary in failing to include in the original freeze-type regulation any exemption of or provision for adjustment of abnormally low prices, we said: "The Administrator, in our opinion, would not be expected to anticipate that in the base period established by him those in an industry would make the largest number of their deliveries of garments in any cost line at less than or close to cost price. The presumption would seem to be that reduced sales would occur only during short periods of time and that they would not continue in volume over so long a period as the five months' base period." So here it was not unreasonable upon the part of the Administrator to fail to anticipate abnormally low prices at some one local point in the base period. He promulgated a regulation which applied to all suppliers of the same class and fixed their maximum prices by the same formula,—the figures at which they had sold during the base period. This was generally fair and equitable. Obviously, it was not essential, in view of the provisions of the procedural regulation for adjustment of abnormally low resulting ceiling prices, to anticipate or assume otherwise than that dealers in any one spot were charging any other than such prices as had been brought about normally by their economic environments and competitive situations.

We have held that where a seller of oil was provided with an adminstrative method by which it might establish its maximum price properly, it could not, because of abnormal factors, adjust such maximum price automatically after the Administrator had established a maximum price. Saunders Petroleum Co. v. Bowles, Em. App., 152 F.2d. 112. So, here, complainant, subject to a regulation fixing its maximum price as of a certain base period was not justified in continuing to sell at such maximum price for two years, and then, without securing an adjustment, of its own accord, raise its ceiling price.

No stigma attaches to complainant's actions. Its deposit of funds fully covering its alleged liability made litigation unnecessary. It conceals nothing; it controverts none of the facts as to sales, but submits a presentation of its conviction that the regulation, properly construed, would afford it some relief. Counsel for complainant expressed, during oral argument, his appreciation of respondent's full consideration and courteous treatment. Surely, such an attitude is to be commended.

Judgment will enter dismissing the complaint.