## WOODS, Housing Expediter, v. GOLT et al.

### Civ. A. No. 1148.

United States District Court
D. Delaware.

July 21, 1949.

668

Nathan P. Michlin, Resident Attorney, Office of the Housing Expediter, Wilmington, Del., Cyril F. Pessolano, Chief, Rent Litigation Section, and Harold L. Wertheimer, Litigation Attorney, Office of the Housing Expediter, Upper Darby, Pa., for plaintiff.

W. Thomas Knowles (Knowles & Allmond), of Wilmington, Del., for defendants.

RODNEY, District Judge.

The question in this case, raised by plaintiff's motion for summary judgment, is whether certain garage space separately rented to a tenant of one of the defendants is a privilege or facility connected with the use or occupancy of the apartment rented by the tenant from such defendant.

Plaintiff instituted suit for a judgment directing defendants to make restitution to their tenant for certain alleged overcharges in rent and for injunctive relief as to the future.

Following defendants' Answer to the Complaint and their answers to plaintiff's Requests for Admissions [1] and Interrogatories,[2] plaintiff moved under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., for summary judgment against the defendant, Leona M. Golt. The parties have

[1] Rule 36, Federal Rules of Civil Procedure, 28 U.S.C.A.

[2] Rule 33, Federal Rules of Civil Procedure, 28 U.S.C.A.

stipulated as to certain facts which are not genuinely in issue upon the motion.[3]

The defendants are husband and wife, and defendant Leona M. Golt is, and has been since 1922, the owner and landlord of premises located at 2705, 2707 and 2709 Market Street, Wilmington, Delaware, which is in the Delaware Defense Rental Area. 2709 Market Street is a single frame dwelling house; Nos. 2705 and 2707 each contain two apartments, one on the first floor and one on the second floor. The lower floor of 2705 is and was occupied by the defendants as their living quarters. This controversy concerns the second floor apartment at 2707 Market Street.

Shortly after the acquisition of these properties by defendant Leona M. Golt in 1922, five garages were erected in the rear of 2707 and 2709 Market Street, with a driveway to these garages between 2707 and 2709. Originally the garages were separated from 2707 by a board fence, and later and at the present time by a picket fence.

No tenant living in either 2705 or 2709 Market Street has ever rented any of the five garages.

On October 6, 1939 Samuel Hearn rented the second floor apartment of 2707 Market Street from the defendant at a monthly rental of $37.50. Since that date and until August 6, 1948, Mr. Hearn and his wife occupied the said second floor apartment as housing accommodations. When Mr. Hearn rented the said apartment in 1939, he was never told that the apartment had a garage in connection with it.

Neither Mr. Hearn nor any of the other tenants of defendant Leona M. Golt living in any of the three properties here involved ever occupied any of the five garages until Mr. Hearn rented one from said defendant by separate agreement in October, 1941, ap- proximately two years after he had rented the second floor apartment at 2707 Market Street.

Since 1941 only two tenants of the first floor at 2707 Market Street have rented one of the garages from defendant Leona M. Golt.

The said defendant has never advertised that any of the apartments in the three properties here involved included garage facilities or accommodations, and the apartments have always been rented separately from any of the garages. At the present time, none of the five garages are rented or used by any of the tenants in any of the three properties here involved, and two are occupied by defendant Harry A. Golt, one as a workshop and one as a garage.

There was in full force and effect at all pertinent times herein a "Rent Regulation for Housing" issued pursuant to Section 2 (b) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 902(b), and/or a "Controlled Housing Rent Regulation" issued pursuant to Section 204 of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1894.[4]

These Regulations and Acts established maximum legal rents for housing accommodations within the Delaware Defense Rental Area and provided that no person should demand or receive any rent for or in connection with the use or occupancy of any housing accommodations in excess of the maximum legal rent. The maximum legal rent in this area under the Emergency Price Control Act of 1942 was set at the amount received for housing accommodations on March 1, 1942 and under the Housing and Rent Act of 1947 at the maximum legal rent in effect on June 30, 1947. The said Regulations and Acts also required that every landlord shall provide with housing accommodations the same essential services as those provided on the maximum rent

---

[3] The relevant papers on the motion are the Complaint, the Answer, as amended, defendants' answers to Interrogatories and Requests for Admission, supporting and opposing affidavits, and a Stipulation of certain undisputed facts.

[4] These Regulations were published in 8 F.R. 7322 and 12 F.R. 4331, respectively. The Emergency Price Control Act is found in 50 U.S.C.A. War Appendix, § 901 et seq. and the Housing and Rent Act of 1947 in 50 U.S.C.A. War Appendix, § 1881 et seq.

date and that "services" include repairs, heat, light, etc. and "any other privilege or facility connected with the use or occupancy of housing accommodations." [5]

As of the basic maximum rent date for this area, i. e., on March 1, 1942, defendant Leona M. Golt was receiving from the said Mr. Hearn the sum of $37.50 per month for the apartment and the sum of $4.00 per month which had been agreed upon as rent for the garage which was rented in October 1941. The total thus received was $41.-50 per month.

Pursuant to the provisions of the Emergency Price Control Act of 1942 and the Regulations issued thereunder, defendant Leona M. Golt duly filed with the rent control authorities a landlord's Registration Statement showing the rent received for the apartment rented to Mr. Hearn to be $37.50 per month as of March 1, 1942. The statement as submitted by said defendant showed that such rental did not include a garage among the services which were landlord-supplied on March 1, 1942.

At no time from March 1, 1942 until July 13, 1948 was any order issued by the Area Rent Director for the Delaware Defense Rental Area changing or modifying the maximum legal rent for the Hearn apartment as shown by the Registration Statement for such apartment filed by defendant, Leona M. Golt.

The rental month for the apartment rented by Mr. Hearn ran from the sixth of one month to the sixth of the next month, whereas for the garage it ran from the fourteenth of one month to the fourteenth of the next month.

From September 14, 1946 to July 13, 1948 defendant Leona M. Golt received from the said Mr. Hearn the sum of $49.00 per month, and the parties agree that this increase resulted from an increase of the monthly amount applicable to the garage from $4.00 to $11.50.

Upon all of the foregoing admitted or stipulated facts, plaintiff contends that the receipt by defendant Leona M. Golt of $49.-00 per month from her tenant, Mr. Hearn, during the period described constituted an overcharge of $7.50 per month as rental for housing accommodations.

For the period September 14, 1946 to July 13, 1947, plaintiff seeks relief under the Emergency Price Control Act of 1942, as amended, and the Regulations issued pursuant thereto. The total amount of the alleged overcharges for this period is $75.00.

For the period July 14, 1947 to July 13, 1948, plaintiff seeks relief under the Housing and Rent Act of 1947, as amended, and the Regulations issued pursuant thereto. The total amount of the alleged overcharges for this period is $90.00.

Altogether, the total alleged overcharges are $165.00.

Plaintiff contends that the foregoing facts establish under the applicable law that the true and actual relationship between defendant Leona M. Golt and her tenant, Samuel Hearn, was such that on the basic maximum rent or "freeze" date, i.e., on March 1, 1942, she was actually renting to said tenant the second floor apartment with a garage included as a service connected therewith and that for such housing accommodations with such services she was receiving a monthly rental of $41.50.

Defendant argues that the foregoing facts show that the rental of the garage was entirely disconnected from the rental of the apartment, was a completely separate and distinct transaction, and was in no way dependent upon or based upon the rental of the apartment. Defendant contends that under the applicable law the garage was not a "privilege or facility connected with the use or occupancy of housing accommodations" and hence was not subject to the provisions of either rental Act here involved.

In Veillette v. Bowles, Em.App., 1945, 150 F.2d 862, 863, the court pointed out that the Emergency Price Control Act of 1942 did not authorize control of rents charged for the use of a garage when its use is not in connection with the use or occupancy of a housing accommodation

---

[5] Sections 3 and 13(a) (7) of the "Rent Regulation for Housing," 8 F.R. 7322, and Sections 1 and 3 of the "Controlled Housing Rent Regulation," 12 F.R. 4331.

as defined by the Act. The court also stated, however, that the right of a householder to use a garage for the storage of his automobile in connection with the use of a dwelling house is a privilege and the furnishing of it a service connected with the use or occupancy of his house.

In the Veillette case, complainant was seeking to have an order of his Area Rent Director partially denying a requested rent increase set aside. On the maximum rent date complainant-landlord was renting a house at $4.00 per week. There was a garage owned by complainant and adjoining the house, but it was not being rented on the maximum rent date. Thereafter complainant rented the house to a new tenant and included as part of the accommodations the adjoining garage. He petitioned for an increase of the rent from $4.00 per week without a garage to $5.00 per week with a garage. The Area Rent Director granted complainant an increase to $4.50 per week, with the garage included.

The Emergency Court of Appeals held that the garage was rented for use in connection with the dwelling house and that the garage was therefore subject to the provisions of the Act and to the orders of the Area Rent Director.

■ The test of whether a garage service is a facility or a privilege connected with the use or occupancy of housing accommodations is the general understanding of the landlord and tenant, and not the contractual liability of the landlord to furnish such service. Woods v. Forest Hills South, 2 Cir., 1949, 172 F.2d 147, 148.

■ If the landlord and tenant have an understanding that the garage rental is not in connection with the use or occupancy of the tenant's apartment and is truly separate and distinct from such use or occupancy, then the garage service is not a facility or privilege connected with the use or occupancy of housing accommodations and is not subject to the regulations affecting the rental of housing accommodations.

In the Veillette case mentioned above, it was obvious that the new tenant and the complainant-landlord understood that the house and adjoining garage were being rented together and constituted housing accommodations with garage service included. Under such circumstances, the garage was of course subject to the control laws and regulations.

In the instant case, the admitted and stipulated facts show clearly that the defendant-landlord and the tenant understood that the garage was not being rented in connection with the use or occupancy of the tenant's apartment. The rental of one of the garages to any of defendant's tenants was the distinct exception rather than the rule. The fact that Mr. Hearn was one of defendant's tenants was a mere fortuitous circumstance insofar as the rental of the garage was concerned. The general rule has been that the garages were rented to anyone who might desire one, and in most cases the garages have been rented to persons who do not occupy any of the defendant's properties. There is no physical or legal connection between the garages and the apartments rented by the defendant, and no affidavit by the tenant Hearn or anyone else has disputed defendant's sworn statement to such effect.

The garage here involved was rented by a separate transaction between the parties which took place some two years subsequent to the renting of the apartment. The Registration Statement filed by defendant showed that the garage was not one of the services provided with the apartment rented to Hearn.

■ The contractual agreements between the parties, i.e., whether the garage was rented by a separate and subsequent agreement or by the same agreement as the apartment, and the fact that the Registration Statement showed that no garage was provided are, of course, not binding in any respect. See Kalwar v. McKinnon, 1 Cir., 1945, 152 F.2d 263, 265. Such matters, however, are relevant to the question of the understanding between the parties.

There is nothing to indicate that the tenant could not have ceased renting the garage and continued to rent the apartment,

nor is there anything to indicate that the tenant could not have ceased renting the apartment and continued renting the garage. Indeed, the stipulated and admitted facts show that either alternative could have occurred.

The cases of Woods v. Forest Hills South, 2 Cir., 1949, 172 F.2d 147, and Johnson v. Bowles, Em.App., 1944, 145 F.2d 166, relied upon by plaintiff, are not in point factually in the instant case.

In the Woods case, the landlord owned seven apartment buildings containing a total of 610 apartments. Six of the buildings had garage units under them providing space for a total of 276 cars. The garages were for the *exclusive* accommodation of the tenants of the seven buildings and were being rented as of the freeze date under separate agreements made simultaneously with the leasing of an apartment or during interval periods. The garages were rented for a sum separate from and additional to the rental for the apartments. The garages were made available to any of the landlord's tenants providing only that there was an unrented garage available. The court held that the general understanding of the parties was that the tenant might reasonably expect to obtain garage facilities in connection with his lease if they were not already completely occupied.

The factual distinction between the Woods case and the instant case seems clearly to be a distinction with a very material difference. Here none of the garages have any physical connection with any of defendant's three rental properties, and there is no evidence that any of the garages was ever rented to any tenant of the defendant simultaneously with the renting of an apartment. The defendant's garages are not rented exclusively to her tenants; indeed, as pointed out above, they are rented almost exclusively to persons who are not her tenants. While none of these matters is in itself dispositive of the question, all of these factors taken together with the other facts in the case clearly show that the understanding between the parties was as urged by defendant.

In the Johnson case, supra, the court had the question whether or not a garage being used by a tenant prior to and on the freeze date with the landlord's knowledge but not his express consent was a service "provided with" the tenancy on the freeze date. There had been no increase in the rental prior to or on the freeze date, although the tenancy had originally not included the garage facilities. The rental property was a house and the garage involved was located almost adjacent thereto.

In the Johnson case, there was no question of whether the garage was being used in connection with the use or occupancy of the rented house on the freeze date. It clearly was being so used. The question was rather whether such use without the express consent of the landlord but with his acquiescence and without paying any additional amount of rent therefor justifies an increase in the maximum rent for such premises when the landlord does consent to the use of the garage, under that section of the Rent Regulation which provides for maximum rent increases where "There has been a substantial increase in the services." [145 F.2d 167.]

The court in the Johnson case held that the garage service was being provided on the freeze date and that the mere fact that it was being gratuitously provided did not justify a rental increase, since increases under such circumstances would be contrary to the basic "freeze" concept.

In the instant case, of course, the sole question is whether the garage was on the freeze date a service or facility connected with the use or occupancy of the apartment. It unquestionably was being rented by the defendant to Hearn, but was it being provided as a service connected with the use of the apartment or as an entirely separate matter?

■ That the mere fact that the lessee of a garage is also the lessee of the lessor's apartment is not sufficient to make the garage a service connected with the use or occupancy of the apartment is amply shown by Bowles v. Simon, 7 Cir., 1944, 145 F.2d 334. While the cited case seems to have held that a garage as such was subject to

the rent regulations even though not a part of or connected with housing accommodations, such question is not before this court. Plaintiff concedes that the rental in the instant case is not a violation unless the garage is a service or facility connected with the use or occupancy of the apartment.

It is true that the Administrator issued an official interpretation of the regulation concerning the facilities accompanying rental of housing accommodations, which interpretation might seem to be at variance with the result here reached. This interpretation was dated August 14, 1942, and is set out in the brief of the plaintiff.[6] The interpretation is based upon no facts whatever except that the landlord, prior to the maximum rent date, was renting both a house and garage to a tenant but by separate agreements. The interpretation on those facts held that the housing accommodation included both house and garage.

Interpretations issued by the Administrator are, when applicable, entitled to great weight. In Bowles v. Seminole Rock Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700, it is said that the interpretation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." That such interpretation is not absolutely controlling upon the courts is shown by Bowles v. Simon, supra, where it is denied that an Administrator may promulgate a regulation and then place an interpretation upon it which becomes controlling on the courts. The latest authoritative discussion of the problem is Fleet-Wing Corporation v. Clark, Em.App.1948, 166 F.2d 145, 147, where it is said, "though the interpretation of the Administrator is not controlling * * * it is entitled to great weight and, unless arbitrary and unreasonable, must be sustained. (Citing cases.)"

The authoritative nature of interpretations of an administrative department under a different Act was considered by this court in McComb v. Consolidated Fisher-

ies Company, 75 F.Supp. 798, 802, affirmed 3 Cir., 174 F.2d 74.

In my opinion, the Administrator's interpretation is not applicable to the facts here present. In this case, it clearly appears that the garage accommodations are not a facility or privilege connected with the housing accommodations.

No tenant of any apartment of the defendants had the use of any garage until a garage was rented to Hearn two years after he rented an apartment. Any rental of any garage to any housing tenant of the defendant was a rarity and does not now exist. The garage was rented to Hearn by a separate agreement expirable at a different time from the housing accommodations. The clear understanding between the landlord and tenant seems to have contemplated a separate and distinct renting of the garage from the apartment.

If the interpretation is based solely upon the facts there present, viz., a renting of the garage and apartment by separate agreements, then the interpretation has no effect upon this case. If the interpretation contemplates that other facts, beyond the mere renting by separate agreement, may exist whereby the renting of a garage may be to a tenant of housing accommodations but entirely separate and distinct from such housing accommodations, then the interpretation in its barest form is not here applicable for the facts here conclusively show such separate and distinct renting.

If the interpretation contemplates that under no circumstances and regardless of the clarity of the intention can a landlord rent an apartment to a tenant and subsequently, as a distinct and separate matter and with no connection with the housing accommodation rent a garage to a tenant of the apartment, then I think such interpretation plainly erroneous.

The motion of the plaintiff for summary judgment must be denied. If the defendant should make such motion it will be considered together with an appropriate order to be submitted.

---

[6] Interpretation 1(a)—II, 2 O.P.A. Rent Desk Service pp. 200:853, 854.