In the Matter of WALTER VAN BLERKOM et al., Suing on Behalf of Themselves and All Persons Similarly Situated, Appellants, *v.* JAMES B. DONOVAN et al., Constituting the Board of Education of the City of New York, Respondents.

First Department, November 12, 1964.

J. Dudley Devine for appellants.

Isidore Heyman of counsel (Seymour B. Quel, Joseph M. Callahan, Jr., with him on the brief; Leo A. Larkin, Corporation Counsel), for respondents.

*Per Curiam.* The order dismissing the petition to review the action of the Board of Education of the City of New York in rezoning elementary Public School 6, Manhattan, effective as of the school term commencing September, 1964, should be affirmed, without costs, on the opinion of Justice Lupiano at Special Term. However, in view of the dissent of Justice Steuer — calling for a trial — it is necessary to indicate our views as to why no trial is necessary.

Essentially, the dissent would require a trial to determine whether the rezoning accomplished herein was dictated by a desire to accomplish integration and reduce racial imbalance, or by the need for reducing overutilization of the facilities of Public School 6. A trial, however, is unnecessary because in our view of the case, if the Board of Education approved the rezoning to correct a racial imbalance, it acted within the scope of its powers; and such purpose would constitute a reasonable basis for its action. The Court of Appeals so indicated in *Matter of Balaban* v. *Rubin* (14 N Y 2d 193, cert. den. 379 U. S. 881). (To the same effect, see *Matter of Vetere* v. *Mitchell*, 21 A D 2d 561; *Matter of Strippoli* v. *Bickal*, 21 A D 2d 365.)

It is within the province of the board to conclude that racial imbalance is harmful to education, and to draw school zones in order to effectuate a better racial balance in the school system. While we agree with the dissent that no constitutional or statutory mandate directs the board to promote integration, there is equally no prohibition against the board's attempt to

achieve integration. The board is free to act in this sphere untrammeled by the courts. Certainly in the area of educational value judgments, the courts should not attempt to substitute their views for those of the board if there is some reasonable basis for the board's conclusion.

Therefore, no trial is necessary to determine to what extent considerations of racial imbalance in the schools prompted the rezoning of Public School 6, and whether other criteria such as overutilization of facilities induced such action. In either event, it was the responsibility of the board to make the determination. In our view, it would have been a valid and substantial basis for sustaining the board's action in this case if the main consideration for its action was the effectuation of a better racial balance in the school system. A trial of the issues suggested by Justice STEUER's dissent would therefore be a futile endeavor.

STEUER, J. (dissenting). I disagree with the holding of Special Term to the extent that I believe the petition presents issues not resolvable on the pleadings and supporting affidavits. I would therefore vote to reverse and order a trial.

The petition is directed against the Board of Education. It alleges that pursuant to authority created in respondents they have divided the city into local public school districts, in each of which there may be several schools of elementary, junior high and high school grade. District No. 6 was created in 1960 and Public School 6 was within its borders. On May 28, 1964, District No. 6 was rezoned by respondents. The effect of the rezoning was to decrease the boundaries of the district. The original northern boundary ran along 94th Street to Park Avenue and thence along 92nd Street to Third Avenue. The new boundary pursues the same contour but the boundary streets are, respectively, 91st Street and 88th Street. The eastern boundary between 88th and 84th Streets, and between 79th and 68th Streets, is changed from Third to Lexington Avenue. The southern boundary is changed from 63rd to 68th Street. The western boundary, Fifth Avenue, is unchanged. As a result of the change, between 275 and 320 pupils who were previously in the school district are now located in other districts and will attend other schools. The petition further alleges that the sole purpose of making the zoning change was to create vacancies in School No. 6 so that pupils from schools outside the district, specifically pupils from schools situated in the East Harlem District north of 96th Street, may be assigned

to attend School No. 6. It is further alleged that the pupils transferred from School No. 6 as a result of the rezoning are almost exclusively of the white race and those proposed to be brought in are almost exclusively Negro or Puerto Rican. It is further alleged that all of the pupils proposed to be transferred reside nearer to other schools than they do to School No. 6, and that these schools are not overutilized. The petition seeks to have the district restored to its former boundaries and to prevent transfer to School No. 6 of pupils outside the district solely because of their race or color.

In addition, the petition contains a great deal of argument and proof. The answer denies most of the allegations of the petition but admits the rezoning, the transfers occasioned by it, and that it is intended to fill vacancies with pupils from the East Harlem District schools. The first defense attacks the sufficiency of the petition. The second alleges that the redistricting had two purposes: reducing overutilization of School No. 6 and providing a degree of integration by creating vacancies to which pupils from the East Harlem schools could be brought in. The defense further alleges that this corrects a situation by which the East Harlem schools were being subjected to overutilization. The defense has the same defects as the petition in pleading proof and argument.

Taking the allegations of the petition as true, as must be done on an application to dismiss, it will be found that respondent board redistricted the school districts for the sole purpose of transferring out pupils of the white race and bringing in pupils of other racial origins. If the board has power to do this, the petition must fall. Even if that power is lacking, but if this were not the sole motive but merely an administrative result of powers legitimately exercised, the petitioners will fail eventually; but this issue is fairly presented and cannot be resolved on the papers before the court.

The legal question presented is whether the board may rezone a school district for the sole purpose of creating vacancies in that district to which pupils from other districts may be brought in so that, by virtue of the pupils brought in or transferred out, a more proportionate racial balance among schools may be effected. Before considering the question, certain contentions raised in the supporting affidavits must be disposed of. In a school system as large and as embracing as that of New York City there will inevitably appear certain special situations. For instance, education is given in Braille. It would not be feasible, if it were indeed possible, to hold these classes in every

school. And the unfortunate pupils who require this form of education must be permitted to attend the schools that supply it, regardless of the school district they happen to live in. The same is true of certain courses which are proper subjects in an educational program but which appeal to or can be appreciated by a limited number of pupils. The Board of Education would certainly be empowered to make suitable arrangements for the attendance of these pupils at the school or schools where the course is given and, if this created an overcrowding at the particular school, rezoning to ameliorate the condition would be a legitimate solution. A different result would seem to be indicated for another situation. It is claimed that the board yielded to pressure to allow the children of United Nations personnel to attend schools of their choice outside the districts of their residence. It is claimed that a significant number of such pupils are allowed to attend Public School 6 and that their attendance improperly taxes the facilities and gives color to the claim that the school was overutilized. It would appear that there is little excuse for the exceptions made on behalf of these children, and the problem created by their assignment to the school may become a proper subject for exploration at the trial. Both of these situations, referred to in the affidavits rather than the pleadings, are used to challenge the legitimacy of the board's finding that School No. 6 was overcrowded by the attendance of pupils rightfully assigned to it. While not directly raised by the pleadings, this is a preliminary issue which must be resolved.

Respondents are concededly charged with the duty of fixing school districts and of determining what school a child shall attend (Education Law, § 2503, subd. 4, par. d). But this latter is limited to the school in the district in which the child resides (Education Law, § 3202, subd. 1). Districts may not be gerrymandered so that a school district serves children who reside closer to a school outside the district (*Matter of Balaban* v. *Rubin*, 20 A D 2d 438, 443, affd. 14 N Y 2d 193). In laying out school districts, not only may the board give consideration to the ethnic composition of the school population as one of the factors determining the location of a new school (*Matter of Balaban* v. *Rubin, supra*) but it may not gerrymander the district to achieve the opposite result, namely, a segregated school (*Taylor* v. *Board of Educ.*, 294 F. 2d 36; *Clemons* v. *Board of Educ.*, 228 F. 2d 853). And this would apply to redistricting where no new school was involved. In the latter case, however, consideration of the ethnic factor would have to be subordinate to the rights of the children of the old and new districts to

attend schools nearest their residence. Whether it would also have to be subordinate to other criteria laid down by the board itself, such as continuity of education, is a question which need not be determined at this point.

Neither party suggests that the rezoning here accomplishes desegregation by adding to a district, predominantly inhabited by one race, a contiguous area predominantly inhabited by another, or a material change in relative percentages of racial attendance by the subtraction effected. The claim is that the school population of the district is being reduced beneath the capacity of the school so that children from noncontiguous areas — which areas could never become a part of the school district — will have an opportunity to attend the school. Respondents argue that the children to be brought in will, in all likelihood, be of different racial origin, and in this way a desirable integration will be effected.

That integration is desirable is not subject to dispute, but in all other respects the board is completely mistaken in its view. It has no right to bring in children from another district, whether they are of the same race as predominantly inhabits the area to which they are transported or not. Race has nothing to do with the question. Schools serve contiguous areas. School zones may not be changed to make the school available to children from noncontiguous areas.

In its zeal to desegregate the schools the board is seeking to change a constitutional prohibition into a constitutional command. The statutory right of a child under our law (Education Law, § 3201) is to be allowed to attend the school of his district and not to be excluded from a public school because of race, creed, color or national origin. That is the identical right which the child enjoys under the Federal Constitution (*Brown* v. *Board of Educ.*, 349 U. S. 294). The Board of Education cannot exclude the child from a school for that reason and, a fortiori, it cannot draw the lines of school districts to accomplish that purpose under purported cover of law. Actually the Board of Education has no more right to inquire into the racial origin of a child than has any other agency. For official purposes, certainly, and for all other purposes, properly, a child is a child, neither a white child nor a colored child, and he lives in the district or he does not. No decision and no mandate, constitutional or statutory, directs the board to produce an artificial integration, that is, to move children about from one school to another on the basis of race. In fact, the practice is interdicted because it cannot be accomplished without displacing some children from the schools of their proper district and without

making a selection of the children to be imported on the basis of their race.*

Applying those principles to the petition and answer before the court, the following is found: an admission that the public school district has been rezoned with the consequence that there are fewer pupils in it; a further allegation that this rezoning was motivated solely to provide vacancies so that pupils of different racial origin might be brought in to fill those vacancies; and a defense which partly admits and partly denies the latter allegation. It admits that the vacancies are intended to be filled in this manner but denies that the rezoning was accomplished for this purpose.

We have seen that the duty of the board is to prevent segregation rather than to accomplish integration. To that end artificially bounded school districts are forbidden. Whether the artificial character is accomplished by eccentric boundaries, called gerrymandering, or by reducing the size of a district, is insignificant. Both methods are illegal for the same reason. And neither becomes legal merely because it will tend to effect a racial integration or reduce segregation. On the other hand, if a school has an attendance that exceeds its capacity, the board may take such steps as are necessary to rectify the situation. If the attendance is excessive by virtue of the fact that students outside the area are improperly assigned to the school, it would appear to be an abuse of discretion to take any other step than to reassign those students to their proper school. If the excess school population results from students properly assigned under the existing school district, it would appear perfectly proper to reduce the size of the school district. Furthermore, it must be perfectly obvious that, if that step is called for and taken, the board cannot make an exact determination so that the school population and the capacity of the school will coincide to the precise number. If, from the proper exercise of the discretionary power to reduce the size of the district, some vacancies result, for the period that the school capacity exceeds the school population the board could fill those vacancies with children from any other district that they see fit, provided those children are willing to attend a school outside their own district, and provided the selection was made without an improper inquiry into the racial origin of the children to be selected.

---

* It is against our public policy generally for any person or body to inquire into the race or creed of any person where exclusion on such basis is forbidden. Cf. Executive Law, § 296, subd. 1, par. (c); subd. 3, par. (c); subd. 5, par. (a), cl. (3); subd. 5, par. (b), cl. (3); subd. 5, par. (c).

The question which is fairly presented by these pleadings is which of these two contentions represents the fact. If the former, the board acted without power, and its action should be annulled; if the latter, it acted within its powers and its disposition cannot be questioned. In advance of trial it is impossible to say what the answer is. Consequently, a trial is needed.

RABIN, J. P., VALENTE, STEVENS and STALEY, JJ., concur in Per Curiam opinion; STEUER, J., dissents in opinion.

Order, entered on September 2, 1964, affirmed, without costs, on the opinion of Mr. Justice LUPIANO at Special Term.

