Joyce Marie CLEMONS, an infant by Gertrude Clemons, her mother and next friend, et al., Appellants,

v.

The BOARD OF EDUCATION OF HILLSBORO, OHIO, a body corporate, et al., Appellees.

No. 12494.

United States Court of Appeals Sixth Circuit.

Jan. 5, 1956.

from enforcing a policy of racial segregation in the public schools of Hillsboro, Ohio, from requiring plaintiffs to withdraw from the Webster and Washington Schools because of their race and color, and from requiring plaintiffs to attend Lincoln Elementary School or any other school in the city of Hillsboro which is exclusively attended by Negro children.[1] The District Court denied the injunction.

There is no controversy as to the material facts of the case. There are three elementary schools in Hillsboro, Ohio, Washington, Webster, and Lincoln. Washington and Webster Schools have 12 regular elementary classrooms each, with one teacher assigned to each room and teaching one grade in the room. For approximately 15 years prior to September 7, 1954, the Webster and Washington Schools have been attended exclusively by white children.

Lincoln School has four classrooms, two of which are in use as regular classrooms. It has long been maintained exclusively for Negro children and it has two full-time Negro teachers who teach six elementary grades in two rooms. On September 8, 1954, Lincoln School had an enrollment of 17 Negro children.

Segregation of school children according to race or color is not permitted under Ohio law. A statute providing for such segregation, Section 4008, Revised Statutes of Ohio (1886), was repealed in 1887, 84 Ohio L. 34. The Supreme Court of Ohio construed these enactments in 1888 and unanimously held that, while under Ohio Revised Statute, Section 4013, "power is conferred on boards of education to make such assignments of the youth of their respective districts, to the schools established by them, as will, in their opinion, best promote the interest of education in their districts, such power cannot be exercised with reference to the race or color of the youth; and section 4008 having been repealed by the act of the general assembly passed February 22, 1887 (84 Ohio Laws 34), separate schools for colored children have been abolished, and no regulation can be

Constance Baker Motley, New York City, James H. McGhee, Dayton, Ohio (Russell L. Carter, Dayton, Ohio, Thurgood Marshall, New York City, on the brief), for appellants.

James D. Hapner, Hillsboro, Ohio, for appellees.

Jack G. Day, Julien C. Renswick, Cleveland, Ohio, for Ohio Civil Liberties Union, amicus curiae.

Before ALLEN, MILLER, and STEWART, Circuit Judges.

ALLEN, Circuit Judge.

This is an equity case filed in the United States District Court on behalf of plaintiffs and others similarly situated, praying for preliminary and permanent injunction enjoining defendants, the Board of Education of Hillsboro, Ohio, hereinafter called "the Board," the individual members of the Board, and the Superintendent of Schools of the city,

---

1. The parties will be denominated as in the court below.

made under section 4013, that does not apply to all children irrespective of race or color." Board of Education v. State, 45 Ohio St. 555, 16 N.E. 373. In Board of Education of School Dist. of City of Dayton v. State ex rel. Reese, 114 Ohio St. 188, 151 N.E. 39, a suit was filed in the Court of Appeals of Montgomery County, Ohio, praying a writ of mandamus to compel the Board of Education and the Superintendent of Schools of the City of Dayton to admit relator's children and other children of the colored race to the schools of the city on equal terms with white children. A demurrer was filed to this petition and overruled in the Court of Appeals. The Supreme Court unanimously affirmed the judgment in favor of the relator and against the Board of Education upon the authority of the Board of Education v. State, 45 Ohio St. 555, 16 N.E. 373.

The Hillsboro schools in part have complied with the Ohio law. The High School in Hillsboro is attended by both Negro and white children. The segregation of pupils in the 7th and 8th grades was discontinued by the Board in 1951. But the long-standing segregation in Lincoln School still exists. On September 7, 1954, plaintiffs, colored children of elementary school age, were registered, three in Webster and four in Washington School, and each assigned a seat in a classroom. Immediately thereafter the schools were closed for several days, and on September 14th plaintiffs were reassigned to Lincoln School.

On September 13th the Board established school zones for the City of Hillsboro. This was the first school zoning ever set up for Hillsboro schools. The resolution of the Board divided the city into three school zones, Washington, Webster and Lincoln. The Lincoln zone was divided into two completely separated parts, one in the northeast and one in the southeast section of the city. Three of the plaintiffs who live in the southeast part of the Lincoln zone have to pass by the Washington School in order to reach the Lincoln School. The Lincoln School is not in the Lincoln zone, but in the Washington zone. There has been some crowding in the schools of Hillsboro, the average number of pupils per room on September 8, 1954, being 35.4 in the Washington School and 38 in the Webster School. There was a drop in the enrollment of Hillsboro of some 29 pupils in the last school year.

In view of the overcrowding of the schools proposals to extend the Washington and Webster buildings were developed by the Board. A bond issue was proposed and approved by the voters in 1953, and the plans for building are now being carried out. The Webster School is to be rebuilt in its entirety and the Washington School is to have an addition. On August 9, 1954, the Board adopted a resolution which reads as follows:

"That the Hillsboro City Board of Education go on record supporting the integration program, for children of Lincoln School, of Supt. Upp on completion of Washington and Webster School Buildings."

The uncontradicted testimony shows that the school officials intended, upon completion of Washington and Webster School buildings, to abandon the use of Lincoln School. The date when the two buildings will be completed is variously estimated as being around the middle of 1956 or around 1957. Defendants claimed in their answer that under the zoning plan the attendance in the elementary schools by children living within Hillsboro is determined by the place of residence of the pupils concerned and not by race, color, or national origin. However, the Superintendent of Schools testified that a "temporary segregation" existed due primarily to the building situation. This "temporary segregation" of course was a continuation of a segregation existing over a number of years at the Lincoln School.

The District Court made the following finding:

"Plaintiffs' evidence furnished through the President of the Board of Education, the Superintendent of the Schools, an expert witness in the person of a professor of educa-

tional administration, and a colored teacher of Lincoln School, together with an agreed stipulation of facts, subject, however, to the qualifying testimony concerning the School Board's program to completely integrate the elementary schools, virtually established the allegations of their complaint, including plaintiffs' claim that the establishment of the so-called elementary school zone is a subterfuge to permit the continuance of Lincoln School for Negro children exclusively."

The District Court denied the relief prayed for upon the ground that it would seriously disrupt the orderly procedure and administration of Washington and Webster Schools if an injunction were granted in the case. It held that under Ohio law, as well as under Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754, the exercise of discretionary powers of the Board should not be interfered with. This conclusion is clearly erroneous and constitutes an abuse of discretion on the part of the District Court.

The District Court did not have the benefit of the decision in Brown v. Board of Education of Topeka, 349 U.S. 294, 75 S.Ct. 753. However, before this case was decided below the Supreme Court had declared in Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, that segregation in the public high schools and elementary schools of the United States is a violation of the 14th Amendment. In the subsequent decision, Brown v. Board of Education of Topeka, 349 U.S. 294, 75 S.Ct. 753, 756, the Supreme Court said that courts will have to consider whether the action of school authorities constitutes "good faith implementation of the governing constitutional principles." The court declared, "At stake is the personal interest of the plaintiffs in admission to public schools as soon as practicable on a nondiscriminatory basis" and stated that the burden rests upon the defendants when they seek additional time in which to desegregate the school sys-

tem to establish that such time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date. Cf. Lucy v. Adams, 350 U.S. 1, 76 S.Ct. 33.

■ The District Court held that the establishment for the first time in Hillsboro of a zoning system with a gerrymandered district set up in two separate parts, designed to embrace practically the entire colored population of the city, was brought about as a subterfuge to segregate children who had been admitted to Webster and Washington Schools. This was in violation of the law of the State of Ohio, Board of Education v. State, 45 Ohio St. 555, 16 N.E. 373; Board of Education of School Dist. of City of Dayton v. State ex rel. Reese, 114 Ohio St. 188, 151 N.E. 39. It was in violation of the decision of the Supreme Court of the United States and of the Constitution of the United States.

■ This is an equity case in which a permanent injunction is sought to protect basic civil rights. The principles governing the issuance of such an injunction are stated by Pomeroy: Equity Jurisprudence, Vol. 4, 5th Ed., 934, 935, as follows:

"Whatever be its form, decree or order, the remedy by ordinary injunction is wholly preventive, prohibitory, or protective. * * *

"In determining whether an injunction will be issued to protect any right of property, to enforce any obligation, or to prevent any wrong, there is one fundamental principle of the utmost importance, which furnishes the answer to any questions, the solution to any difficulties which may arise. This principle is both affirmative and negative, and the affirmative aspect of it should never be lost sight of, any more than the negative side. The general principle may be stated as follows: Wherever a right exists or is created, by contract, by the ownership of property or otherwise, cognizable by law, *a violation of that right will be prohibited,* unless there are other con-

siderations of policy or expediency which forbid a resort to this prohibitive remedy. *The restraining power of equity extends, therefore, through the whole range of rights and duties which are recognized by the law, and would be applied to every case of intended violation, were it not for certain reasons of expediency and policy which control and limit its exercise.* This jurisdiction of equity to prevent the commission of wrong is, however, modified and restricted by considerations of expediency and of convenience which confine its application to those cases in which the legal remedy is not full and adequate. Equity will not interfere to restrain the breach of a contract, or the commission of a tort, or the violation of any right, when the legal remedy of compensatory damages would be complete and adequate. The incompleteness and inadequacy of the legal remedy is the criterion which, under the settled doctrine, determines the right to the equitable remedy of injunction."

The same test was established by the Supreme Court in Sterling v. Constantin, 287 U.S. 378, 403, 53 S.Ct. 190, 197, 77 L.Ed. 375. The Supreme Court said:

"Whether or not the injured party is entitled to an injunction will depend upon equitable principles; upon the nature of the right invaded and the adequacy of the remedy at law."

■■ The rights here sought to be protected have existed under Ohio law since 1888 and they were declared by the Supreme Court to exist under the United States Constitution in an opinion announced several months before the District Court denied the injunction sought. Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. If injunction will issue to protect property rights and "to prevent any wrong," Pomeroy, supra, it will issue to protect and preserve basic civil rights such as these for which the plaintiffs seek protection. While the granting of an injunction is within the judicial discretion of the District Judge, extensive research has revealed no case in which it is declared that a judge has judicial discretion by denial of an injunction to continue the deprivation of basic human rights.

The District Court in the instant case found that such rights had been invaded when it found that the zoning resolution was adopted as a subterfuge in order to continue segregation. The children were assigned seats in non-segregated schools at a time when the school population was numerically larger than at present.

■■ The excuse of crowding to justify segregation has no basis in law nor, in this case, in fact. The court's denial of the permanent injunction prayed for was entered February 16, 1955. It is contemplated that the building program which will provide additional classrooms will not be completed until the middle of 1956, or perhaps until 1957. The judgment below continued for an indefinite period the violation of law carried out by the Board of Education. In view of the admitted violation of plaintiffs' statutory and constitutional rights the equities here are on the side of plaintiffs. Equitable relief by injunction is essential in order to protect these colored children. There is no adequate remedy at law.

■ It follows that the judgment of the District Court is contrary to the rules of equity and constitutes an improvident exercise of judicial power. It is generally held that the trial court abuses its discretion when it fails or refuses properly to apply the law to conceded or undisputed facts. Union Tool Co. v. Wilson, 259 U.S. 107, 112, 42 S.Ct. 427, 66 L.Ed. 848. Misapplication of the law to the facts is in itself an abuse of discretion. Hanover Star Milling Co. v. Allen & Wheeler Co., 7 Cir., 208 F. 513, 523. Such abuse of discretion requires reversal. Bowles v. Simon, 7 Cir., 145 F.2d 334. Here the allegations of the complaint were sufficient, the evidence was undisputed, and it was undisputed

that defendants ignored the statutory and constitutional rights of these plaintiffs.

It was stated in Hecht Co. v. Bowles, supra [321 U.S. 321, 64 S.Ct. 592], that the discretion exercised by the courts in granting an injunction under the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., "must be exercised in light of the large objectives of the Act." We think the large objectives of the non-segregation program support plaintiffs' contentions. The crowding problem relied on by defendants is small and in no way comparable in difficulty or complexity to the shift of entire school systems necessitated in certain states described in the education cases Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and 349 U.S. 294, 75 S.Ct. 753.

There are seven plaintiffs and on September 8, 1954, seventeen additional colored children were enrolled in Lincoln School. The total number of segregated colored children approximates the figure by which the school population of Hillsboro is smaller this year than last year. If the Board will recognize the law it will have no greater problem in placing these colored children than in placing an equal number of white children. Since Lincoln has been for many years a segregated school, it is a fair assumption that the Board would not send new pupils, white children, to the Lincoln School. It did not do so, although there were two vacant schoolrooms at Lincoln which could have been used to decrease the general crowding. The Board doubtless would send new pupils, white children, to Webster and Washington Schools. The Negro children should be given the same treatment.

In its latest decision the Supreme Court has enjoined upon the school authorities that they act "with all deliberate speed". Brown v. Board of Edu-

cation of Topeka, 349 U.S. 294, 301, 75 S.Ct. 753, 757. Certainly in Lucy v. Adams, supra, the Supreme Court indicated its determination to have these matters taken care of promptly.

The majority of the court concludes that the Board abused its discretion and violated state and constitutional law in establishing the zoning ordinance and assigning these plaintiffs to segregated schools, and that the District Court abused its discretion in refusing to enjoin this continued violation of law.

The writer of this opinion thinks that this case should be remanded to the District Court with instructions to restate its conclusions of law in accordance with the majority opinion and to issue a permanent injunction as prayed for in the complaint and to enjoin the defendants from establishing school zones in the city of Hillsboro in such a way as to effect segregation of school children upon a basis of race or color. As this is a class action the relief described above should in my opinion be accorded, not only to the plaintiffs named, but to other colored children similarly situated. Since neither of my brothers concurs in such an order I am compelled to concur in an order along the line suggested by my concurring colleague, Judge STEWART.

STEWART, Circuit Judge (concurring).

At the time this case was decided, the Supreme Court's second opinion in the segregation cases had not been announced. Brown v. Board of Education of Topeka, 1955, 349 U.S. 294, 75 S.Ct. 753. The district court was therefore without the guidance of that decision.[1] In the retrospective light of that opinion, all three members of this court are agreed that the district court was in error in not retaining jurisdiction of this controversy, and that the case should

---

1. Following a hearing on appellants' motion for a preliminary injunction, the district court originally continued further proceedings until two weeks after the Supreme Court should issue its decision on the manner in which relief was to be accorded in the segregation cases. The district court proceeded to a final adjudication of this case prior to that time only after this court had issued a show cause order in response to the appellants' petition for a writ of mandamus.

now be remanded to that court with directions to retain jurisdiction.

The single question which appears to divide us is what guidance, if any, we should now give the district court as to the future exercise of its jurisdiction. That question, I think unfortunately, must apparently be cast in terms of whether or not there has been an "abuse of discretion." Certainly there has been none in any popular concept of that phrase. The district judge obviously gave thorough consideration to the issues involved. The decision he reached was motivated by his confidence that the human problem here was being worked out in an orderly way by the voluntary action of the people of the Hillsboro community. In other contexts the court's decision would have been a commendable exercise of judicial self-restraint, consistent with historic principles of equity. Hecht Co. v. Bowles, 1944, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.

"The term abuse, however, when applied to a court's exercise of its discretion is peculiarly of legal significance, wholly unrelated to the same term when used in common parlance. * * * Abuse of discretion in law means that the court's action was in error as a matter of law." Beck v. Wings Field, Inc., 3 Cir., 1941, 122 F.2d 114, 116.

In the present case I think the area permissible under the law for the exercise of judicial discretion was an extremely narrow one, and that its allowable limits were exceeded by the district court in denying injunctive relief.

In the cases recently decided by the Supreme Court racial segregation on the part of the school authorities was required or permitted by the states involved. The Court recognized in its second opinion in those cases that the transition to an integrated school system in such states would involve many difficult practical problems, varying in each locality, but in each locality requiring the uprooting of a system of education built upon decades of state custom and state law. Yet the Court directed that that transition take place with "all deliberate speed."

By contrast the segregation of school children because of their race has been contrary to the law of Ohio for almost seventy years. The Hillsboro Board of Education created the gerrymandered school districts after the Supreme Court had announced its first opinion in the segregation cases. The Board's action was, therefore, not only entirely unsupported by any color of state law, but in knowing violation of the Constitution of the United States. The Board's subjective purpose was no doubt, and understandably, to reflect the "spirit of the community" and avoid "racial problems," as testified by the Superintendent of Schools. But the law of Ohio and the Constitution of the United States simply left no room for the Board's action, whatever motives the Board may have had. I think the appellants were clearly entitled to injunctive relief as a matter of right in this case.

I therefore concur with Judge ALLEN in remanding this case to the district court with directions to enjoin the defendants from continuing racial segregation of children in the Hillsboro schools. But I would give a wider scope to the district court within which to frame the terms of its decree.

Our decision in this case will be announced in the midst of a school year. No reason appears why those Negro children of school age who are not now attending any school should not be admitted immediately to whichever of the three schools a system of attendance zones based upon geographic or other relevant non-racial considerations may dictate. To undertake before the end of the present school year a wholesale shifting of the other Negro and white children now in school might, however, serve to cause dislocation and hardship out of proportion to the purpose to be served. So, at least, I think the district court might properly find.

I therefore believe that this case should be remanded to the district court with instructions to retain jurisdiction, and after prompt notice to the parties and opportunity for hearing, to frame a decree which will provide for the im-

mediate admittance to school on a non-segregated basis of school age Negro children not now in any Hillsboro public school, and which will further provide for the end of all racial segregation in the Hillsboro public schools on or before the commencement of the school year in September, 1956.

It was estimated at the time of the hearing in the district court that the new school buildings in Hillsboro would be completed about January, 1957, although the record is not entirely clear on this point. If that is true, there may be some overcrowding of classrooms for the first half of the next school year, in the event the Board decides to make no use of the present Lincoln School building. Overcrowded classrooms, however, are unfortunately not peculiar to Hillsboro, and the avoidance alone of somewhat overcrowded classrooms cannot justify segregation of school children solely because of the color of their skins.

MILLER, Circuit Judge (dissenting).

The granting or denial of the injunction prayed for was a matter within the judicial discretion of the District Judge. Brown v. Board of Education of Topeka, 349 U.S. 294, 300–301, 75 S.Ct. 753, 756.

In such cases it is well settled that upon appeal the ruling will not be disturbed unless contrary to some rule of equity or the result of improvident exercise of judicial discretion. Meccano, Ltd. v. John Wanamaker, 253 U.S. 136, 141, 40 S.Ct. 463, 64 L.Ed. 822; National Fire Ins. Co. of Hartford v. Thompson, 281 U.S. 331, 338, 50 S.Ct. 288, 74 L.Ed. 881. The discretion of the chancellor is necessarily broad and a strong showing of abuse must be made to reverse it. United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303. Discretion, in this sense, is abused when the judicial action is arbitrary, not justifiable in view of the situation and circumstances. Hartford-Empire Co. v. Obear-Nester Glass Co., 8 Cir., 95 F.2d 414, 417; Delno v. Market St. Ry. Co., 9 Cir., 124 F.2d 965, 967. If reasonable men could differ as to the propriety of the action taken by the District Judge, it can not be said that the District Judge

abused his discretion. Delno v. Market St. Ry. Co., supra; McHenry v. Foutty, 223 Ind. 335, 60 N.E.2d 781, 158 A.L.R. 537.

Irrespective of whether we agree or disagree with the ruling of the District Judge, I do not believe his ruling can be considered arbitrary or one concerning which reasonable men might not differ. Problems related to administration, which the Supreme Courts specifically pointed to in Brown v. Board of Education of Topeka, supra, 349 U.S. at pages 300–301, 75 S.Ct. at page 756, as problems which the Court might consider in reaching its decision, are present in this case, such as those arising from the physical condition of the school plant and the school transportation system. The District Judge was also authorized by the same opinion to consider the adequacy of any plans which the Board might have to meet these problems and to effectuate a transition to a racially nondiscriminatory school system. The Board has adopted a plan which will effectuate the transition as soon as construction work now in progress is completed. The plan has been approved by the residents of the community who have voted the necessary bonds to finance it.

It should also be noted that this case does not have a background of opposition on the part of the Board to integration of the public school system in Hillsboro. The Hillsboro High School has been integrated for some years. Segregation of pupils in grades 7–8 was discontinued in 1951. At that time the Board discussed the question of integration of the complete school system in contemplation of the passage of bond issues. Three proposed bond issues failed to pass, but in 1953 the necessary bond issue was approved. On August 9th, 1954, before this action was filed, the Board unanimously passed a resolution approving a plan calling for integration of all school children in Hillsboro effective upon the completion of the new elementary buildings. The plan included the rehabilitation of the Washington building with the interior torn down and rebuilt, the work to start in June 1955. The Board de-

cided that integration should be delayed until this work was completed.

The Supreme Court stated in its opinion in Brown v. Board of Education of Topeka, supra [349 U.S. 294, 75 S.Ct. 756], that the District Courts should require that local school authorities "make a prompt and reasonable start toward full compliance with our May 17, 1954, ruling. Once such a start has been made, the courts may find that additional time is necessary to carry out the ruling in an *effective manner*." (Emphasis added.) The additional directive that there must be a "good faith compliance at the earliest practicable date" does not require an immediate transition, regardless of the practical problems involved. The language itself recognizes the probable existence of practical problems, the solution of which, as pointed out by the Court, is the primary responsibility of the school authorities.

I am of the opinion that there was no abuse of discretion on the part of the District Judge in refusing to grant the injunction prayed for. I believe that the action should be retained on the docket of the District Court for further consideration by the Court if and when future developments warrant such additional consideration.