Mark E. WAYNE; Carla L. Wayne; Roland L. Kendrick; Bret E. Smith; Brenda S. Smith; Robert J. Rouse, Jr.; Sharon Rouse; Donald G. Stillion; Beverly J. Stillion; William H. Tuel; Marjorie R. Tuel; Claude J. Bailey; Margaret J. Bailey; Larry L. Hartley; Kathleen J. Hartley; Judy K. Costello; Nancy Stuchell; and Jeffrey Stuchell, Plaintiffs–Appellees, Cross–Appellants,

v.

VILLAGE OF SEBRING; J. Michael Pinkerton, Individually, and as Mayor, President of Council, and Acting Village Manager of the Village of Sebring; James R. Conny, Individually, and as President Pro Tempore and Councilman of the Village of Sebring; John W. Smith, Individually, and as Councilman

of the Village of Sebring; Douglas L. Eaton, Individually, and as Councilman of the Village of Sebring; James V. Daniels, Individually, and as Councilman of the Village of Sebring; Alan C. Flowers, Individually, and as Councilman of the Village of Sebring; and Joseph E. Igro, Individually, and as Councilman of the Village of Sebring, Defendants–Appellants, Cross–Appellees,

Community Program Loan Trust; Shawmut Bank, N.A.; General Electric Capital Corporation; and Farmers Home Administration, Defendants.

Nos. 93–3354, 93–3384.

United States Court of Appeals, Sixth Circuit.

Argued June 20, 1994.

Decided Sept. 29, 1994.

Steve J. Edwards, Grove City, OH (briefed), Karen D. Kendrick–Hands, Grosse Pointe Park, MI (argued and briefed), for Mark E. Wayne, et al.

Kenneth J. Cardinal, Sebring, OH, Alan E. Johnson (argued and briefed), Leo R. Ward, Smith R. Brittingham, IV, Ward & Associates, Cleveland, OH, for the Village of Sebring, J. Michael Pinkerton, James R. Conny, John W. Smith, Douglas L. Eaton, James V. Daniels, Alan C. Flowers and Joseph E. Igro.

Before: JONES and RYAN, Circuit Judges; and BERTELSMAN, Chief District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Plaintiffs are 18 residents of Smith Township, Mahoning County, Ohio, who reside within the service area of the Sebring Village Waterworks System. They brought this civil rights action, pursuant to 42 U.S.C. §§ 1983 and 1985, against, *inter alia*, the Village of Sebring and its council members and manager. Plaintiffs challenge Sebring's recently enacted ordinances providing that the village will supply water and sewer service to those outside the village limits only upon the landowners' annexation of the land to Sebring. Pursuant to a motion for summary judgment, the district court dismissed the individual council members and village manager. During a jury trial, the district court directed a verdict in favor of Plaintiffs and against the village on the issue of liability, and granted at least part of the injunctive relief sought by Plaintiffs. The jury then awarded Plaintiffs $55,600 in damages. Subsequently, the court awarded Plaintiffs nearly $82,000 in attorney fees.

On appeal, Defendants contend that the district court should not have directed a verdict in Plaintiffs' favor; rather, it should have either granted one of Sebring's motions for judgment as a matter of law, or at least its motion for a new trial. Defendants also challenge the court's jury instructions on damages and its denial of Defendants' motions to conduct additional discovery after the discovery cut-off date. Finally, the individual defendants who prevailed on summary judgment argue that the court should have granted their request for attorney fees. On cross-appeal, Plaintiffs contend that the court should not have dismissed the village manager and council members from the suit, that the injunction issued by the court should have been broader, and that the court abused its discretion in reducing the attorney fees award from the amount for which Plaintiffs applied.

* The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

We affirm the court's grant of summary judgment in favor of the individual defendants, its directed verdict in favor of Plaintiffs, and its denial of Sebring's motions for judgment as a matter of law and for a new trial. We also affirm the court's jury instructions, its denial of Defendants' motion to conduct additional discovery, and its denial of the individual defendants' application for attorney fees. We reverse the court's award of Plaintiffs' attorney fees and remand for further proceedings. Further, we find that the lower court neglected to consider a portion of Plaintiffs' request for injunctive relief; we remand this one matter for initial consideration by the trial court.

## I. Facts

In 1952, Sebring entered into a contract with the Maple Ridge Water Association ("MRWA"), which consisted of seventy residents living in Smith Township adjacent to Sebring. The MRWA promised to finance and construct the water lines necessary to hook into Sebring's water system in exchange for Sebring's promise to provide MRWA's members with water service, at the members' expense, for the next twenty years. The contract provided that the pipes paid for and installed by the MRWA became the immediate property of Sebring.

In the late 1970s, Sebring's water treatment plant was eroding and in need of repair. Sebring obtained a $3,575,000 loan from the federal Farmers Home Administration ("FmHA"), in consideration for which Sebring issued to FmHA a low interest rate bond payable over the next 40 years. The loan was governed by the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 *et seq.* Regulations enacted pursuant to this Act provided that, in order to secure the loan, Sebring had to pass an ordinance outlining the manner in which it was to repay the loan. Using language taken directly from the pertinent regulation, Sebring enacted a Loan Resolution providing that Sebring was required to:

> provide adequate service to all persons within the service area who can feasibly and legally be served and to obtain FmHA's concurrence prior to refusing new

or adequate services to such persons. Upon failure to provide services which are feasible and legal, such person shall have a direct right of action against the association or public body.

Loan Resolution ¶ 14 (quoting 7 C.F.R. § 1942.17(n)(2)(vii)).

In September 1987, the FmHA assigned its interest in Sebring's bond to the Community Program Loan Trust as part of the Omnibus Budget Reconciliation Act of 1986. Shawmut Bank served as trustee of the trust, and General Electric Capital Corporation ("GECC") served as the trust's agent.

Although in 1980, Sebring became classified as a city, Sebring lost some of its population over the following ten years. Consequently, after the 1990 census, Sebring was reclassified as a village. Plaintiffs speculate that this reclassification spurred village officials to implement an aggressive annexation campaign.

In November 1990, Sebring enacted an ordinance requiring those who use the village's water and sewer services, residing within Mahoning County but outside of the village proper, to annex their property to the village. Prospective customers would be connected to Sebring's water or sewer services only upon prior annexation, and, as for current customers who failed or refused to annex their property, their water or sewer services would be disconnected within 180 days. Ordinance No. 1477–90.

Under Ohio law, a municipal ordinance does not become effective for at least 30 days, during which time, if a referendum petition is filed, the ordinance does not become effective until a referendum election is conducted. Ohio Rev.Code Ann. § 731.29. Such a petition was filed with regard to Sebring's Ordinance No. 1477–90, staying the resolution from taking effect. Six days after the petition was filed, the village council passed an emergency ordinance, No. 1481–90, which implemented the provisions of 1477–90 immediately without the referendum process. Subsequently, Ordinance No. 1477–90 was defeated in the referendum election of November 1991, but Defendants continued their policy of denying water service to non-

residents who declined to annex their property to the village.

In January 1991, FmHA sent a letter informing Sebring officials that the village was still obligated to the terms of its Loan Resolution. This letter did not deter Sebring from enforcing its new ordinance. Sebring sent a letter to Plaintiff Roland L. Kendrick, who had been a customer of Sebring's water service since 1952. Kendrick was in the process of selling his home. The letter informed him that the purchaser would have to agree to annexation in order to receive water service. Kendrick claims this annexation policy resulted in the purchaser's backing out of the deal. Plaintiff Judy K. Costello similarly claims that Sebring's refusal to transfer water rights upon the sale of her home made it impossible for her to sell the home.

Plaintiffs Mark E. and Carla L. Wayne, who were building a new home in the area, received permission to tap into Sebring's water lines prior to the enactment of Ordinance No. 1477–90, and had already paid a tap-in fee. Sebring's refusal to provide water service to the Waynes unless they annexed the property rendered the Waynes unable to obtain financing to build their home.

Until Plaintiffs Jeffrey and Nancy Stuchell lost their home in a fire, they were customers of Sebring's water service. After the fire, they purchased a mobile home and moved it onto their property, but Sebring refused to provide water service. They sold their mobile home at a loss.

Plaintiffs Bret E. and Brenda S. Smith purchased their home and began to receive water service from Sebring just before Ordinance No. 1477–90 was enacted. Without any notice, the Smiths returned home one day to find Sebring employees digging up the water pipes in their yard.[1] The Smiths went without water for eight months before they drilled a well to meet their water needs.

In April 1991, GECC sent a letter to Sebring informing its officials that Ordinance Nos. 1477–90 and 1481–90 violated the terms of the bond documents and the Loan Resolution. The village council responded by attempting to repeal the Loan Resolution. Ordinance No. 805–91. GECC notified the council that the trust refused to acquiesce in this attempted repeal, and that Sebring remained bound by the terms of the Loan Resolution.

In October 1991, Plaintiffs initiated the instant litigation against, *inter alia,* the Village of Sebring and the village's council members and manager, claiming that Ordinance Nos. 1477–90 and 1481–90 violated their rights under the Consolidated Farm and Rural Development Act, and the Due Process, Equal Protection, and Privileges and Immunities Clauses of the United States Constitution.[2] All of the Plaintiffs except for Robert J. and Sharon Rouse sought: (1) a declaratory judgment that the Loan Resolution and the terms of the bond documents remained binding and that Defendants' acts violated Plaintiffs' rights to water service; (2) an order enjoining the termination of their water service; and (3) costs and attorney fees. The Rouses sought identical relief with regard to sewer service rather than water service. Additionally, Kendrick, Costello, the Waynes, the Stuchells, and the Smiths sought compensatory and punitive damages.

The district court granted summary judgment in favor of all of the individual village officials on the basis of qualified immunity. By September 1992, when the matter was

---

1. Although Sebring contends that Bret Smith testified that he did have advance notice that his water would be shut off, the trial transcript shows that Smith testified that he was informed that his water would be turned off only upon his arrival home, when he asked the men digging in his yard what they were doing. J.A. at 1058–59.

2. In addition to Kendrick, Costello, the Waynes, the Stuchells, and the Smiths, Plaintiffs include fellow Smith Township residents Robert J. and Sharon Rouse, Donald G. and Beverly J. Stillion, William H. and Marjorie R. Tuel, Claude J. and

Margaret J. Bailey, and Larry L. and Kathleen J. Hartley. In addition to the Village of Sebring itself, Defendants include Mayor and Council President J. Michael Pinkerton, Village Council members James R. Conny, John W. Smith, Douglas L. Eaton, James V. Daniels, Alan C. Flowers, Joseph E. Igro, the Community Program Loan Trust, the Shawmut Bank, GECC, and FmHA. The latter four defendants were dismissed from the suit by the district court, and are no longer parties on appeal.

tried before a jury, the only remaining defendant was Sebring. During the trial, both parties moved for directed verdicts. Deciding that the issue of liability was purely a question of law, the court granted Plaintiffs' motion, reasoning that: (1) Plaintiffs enjoyed a property interest in continued water service protectable by the Due Process Clause, and that Sebring deprived Plaintiffs of this interest without providing notice or an opportunity for Plaintiffs to be heard; (2) Plaintiffs are entitled to receive continued water service on the basis of the Loan Resolution; and (3) Plaintiffs are also entitled to continued water service pursuant to 7 U.S.C. § 1926. The court enjoined Sebring from discontinuing water service to Plaintiffs' properties so long as Plaintiffs and their successors and assigns comply with all lawful rules and regulations regarding the receipt of water service. Perhaps due to an oversight, the court did not include sewer service within the injunction, nor did it otherwise discuss sewer service.

The court submitted the question of damages to the jury, which returned a verdict for $55,600.[3] Subsequently, the court awarded Plaintiffs $81,797.56 in attorney fees pursuant to 42 U.S.C. § 1988. This was far less than Plaintiffs' counsel requested; the court disallowed much of the time claimed due to excessiveness, duplication and limited success, and reduced the hourly rate based on the court's understanding of prevailing local market rates. The court also denied the individual defendants' application for attorney fees. This appeal followed.

## II. Discussion

### A. Motions for Judgment as a Matter of Law, and for New Trial

■ When reviewing a district court's decision to grant or deny a motion for judgement as a matter of law, we apply the same standard as that used by the district court: the court should neither weigh the evidence, evaluate the credibility of the witnesses, nor substitute its judgment for that of the jury; rather it must view the evidence in the light

most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. *Agristor Leasing v. A.O. Smith Harvestore Products,* 869 F.2d 264, 268 (6th Cir.1989). "Only when it is clear that reasonable people could come to but one conclusion from the evidence should a court grant a motion for directed verdict." *Lewis v. City of Irvine,* 899 F.2d 451, 454–55 (6th Cir.1990); *see also Marsh v. Arn,* 937 F.2d 1056, 1060 (6th Cir.1991).

■ We review the court's denial of Defendants' motion for a new trial only for abuse of discretion; the trial court should deny such a motion if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were he the trier of fact. *United States v. L.E. Cooke Co.,* 991 F.2d 336, 343 (6th Cir.1993). An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made. *In re Bendectin Litigation,* 857 F.2d 290, 307 (6th Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989); *Schrand v. Federal Pacific Electric Co.,* 851 F.2d 152, 156–57 (6th Cir. 1988).

The district court provided three separate rationales for directing a verdict in Plaintiffs' favor on the issue of liability: first, that Sebring violated Plaintiffs' procedural due process rights; second, that Sebring violated its own Loan Resolution; and third, that Sebring violated the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 *et seq.* If we agree with even one of these rationales, we are obliged to affirm.

#### 1. Procedural Due Process

Because we agree with the district court's rationales based on statutory law, it is not necessary for us to reach the constitutional issues raised by the parties' due process arguments.

#### 2. Loan Resolution

■ The Loan Resolution, which Sebring was required to enact under the Consolidated

---

3. The jury awarded $5,000 to Kendrick, $12,000 to Costello, $10,000 to the Waynes, $15,000 to the Smiths, and $13,600 to the Stuchells.

Farm and Rural Development Act, 7 U.S.C. § 1921 *et seq.*, guarantees the right of continued water service to all rural residents within a defined service area, where providing such service is legal and feasible. The defined area included Plaintiffs' properties. There can be no doubt that it is legal and feasible for Sebring to provide such service to Plaintiffs; it has been doing so for years and it continues to do so now. It follows that Sebring may not withdraw its offer of service so long as the Loan Resolution remains in effect.

Defendants present four arguments intended to evade this conclusion. We find all four to be meritless. First, Defendants cite *Fairway Manor, Inc. v. Bd. of Comm'rs,* 36 Ohio St.3d 85, 89, 521 N.E.2d 818, 822 (1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 776 (1989), for the proposition that municipally-owned utilities have no duty under state law to sell their products to non-residents in perpetuity merely because they once agreed to do so. However, *Fairway Manor* did not involve. any statutory obligation arising under federal law or under local ordinance. In the present case, though, the Loan Resolution, and the Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 *et seq.*, created the duty to continue supplying water, not in perpetuity, but at least for the 40 year term of the loan.

Second, Defendants point out that § 1926(a)(20) expressly prohibits the Secretary of Agriculture from conditioning approval of FmHA loans upon requirements other than those specified under the Act. They conclude from this that the administrative regulations, which gave rise to the Loan Resolution, are invalid. There are two problems with this argument. First, § 1926(a)(20) became effective in 1990, too late to have any effect on litigation arising from an FmHA loan made in the late 1970s pursuant to the

regulations as they existed at that time. Second, § 1926(a)(20)'s prohibition on the Secretary's rulemaking authority is extremely limited in light of § 1989(a), which is also part of the Act. This latter section provides that "[t]he Secretary is authorized to make such rules and regulations, prescribe the terms and conditions for making or insuring loans, security instruments and agreements, except as otherwise specified herein, and make such delegations of authority as he deems necessary to carry out this chapter." [4] From § 1989, it follows that all of the regulations that are relevant to the present case remain valid, § 1926(a)(20) notwithstanding.

■ Next, Defendants contend that the Loan Resolution was binding only so long as FmHA held Sebring's bond. The Resolution provides that it "shall be binding upon [Sebring] as long as the bonds are held or insured by the Government." *Accord* 7 C.F.R. § 1942.1(c) ("Loans sold without insurance by FmHA to the private sector will be serviced in the private sector and will not be serviced under this subpart."). In support of this proposition, Defendants rely upon *Krug v. Sebring,* Case No. 92 C.A. 49, 1993 WL 546611 (Mahoning Cty. Ct.App. December 30, 1993). In *Krug,* a group of residents of the Village of Beloit, which is just east of Sebring, sought an order directing Sebring to extend its waterlines to Beloit.[5] The plaintiffs' theory was based on the same loan resolution that is at issue in the present case. The trial court granted summary judgment in favor of Sebring, and the Mahoning County Court of Appeals affirmed, holding that the Loan Resolution ceased to be binding on Sebring as of 1987 when FmHA sold Sebring's bond to the Community Program Loan Trust.

We reject the state court of appeals' interpretation of federal law. The court failed to consider that when Congress ordered the

---

**4.** Subsections 1989(b) through (d) set forth specific limits to the Secretary's rulemaking authority that are not relevant in the present case.

**5.** *Krug* is unlike the present case in several respects. The *Krug* plaintiffs seek an extension of Sebring's water service whereas Plaintiffs in the present case seek continuation of service. Also, unlike the *Krug* plaintiffs, many of the present plaintiffs enjoy contracts with Sebring for such

service. Finally, it is not clear from the *Krug* opinion whether or not Beloit is within Sebring's service area as defined by Sebring and FmHA, or whether service to Beloit would be engineeringly and economically feasible. Thus, our criticism of one aspect of *Krug* does not imply that we have an opinion as to whether the *Krug* plaintiffs should ultimately prevail.

sale of these sorts of bonds to private corporations as part of the Omnibus Budget Reconciliation Act of 1986, it also provided that, but for one exception not relevant to *Krug* or to the present case, the sale "shall not alter the terms specified in the note or other obligation." Pub.L. 99–509 § 1001(c) (reprinted in "Historical and Statutory Notes" to 7 U.S.C.A. § 1929a (1988)). This provision is clear enough on its face to dispose of Defendants' argument, *Krug* notwithstanding.

■ Moreover, FmHA has expressly rejected Defendants' position. *See* J.A. at 1745 (Letter from FmHA to Sebring) (explaining that despite the sale of the bond from FmHA to GECC in 1987, Sebring is still obligated to the terms and conditions of the Loan Resolution; "The City now is simply obligated to GECC instead of FmHA ... to provide service (water) to all areas that can be engineeringly and economically feasibly served."). It is well-settled that, where a government agency has administrative authority over a statute, we are obliged to accord great deference to the agency's reasonable interpretation of that statute. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984).

Finally, Defendants contend that Sebring and FmHA never enjoyed a "meeting of the minds" regarding their obligation to provide service to non-residents, when, in the late 1970s, they contracted to receive FmHA funds. However, documents in the record, including a service area map that establishes the scope of Sebring's obligation to provide water service, indicate that Defendants fully understood their obligation to provide service to the properties owned by Plaintiffs.

### 3. 7 U.S.C. § 1926

The Consolidated Farm and Rural Development Act, 7 U.S.C. § 1921 *et seq.*, grants the Secretary of Agriculture the authority to make or insure loans to associations, including municipalities, to provide for "the conservation, development, use, and control of water." § 1926(a)(1). Section 1926(b) provides:

The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

### a.

■ The first provision of this section, on its face, prohibits anyone from curtailing or conditioning the offer of water service based on inclusion within municipal borders. Defendants dismiss this facially apparent interpretation of the statute by presuming that this language only applies where the municipality to which the statute refers is an entity separate from the association. *See* Defendants' Br. at 43. That this presumption is unwarranted is obvious from the use of the phrase, "*any* municipal corporation or other public body." Defendants' presumption would render the word "any" meaningless. *Accord Pinehurst Enters. v. Town of Southern Pines*, 690 F.Supp. 444, 451 (M.D.N.C. 1988) ("Section 1926(b) establishes a bright line rule; it unambiguously prohibits any curtailment or limitation of an FmHA indebted association's service by municipal annexation ...") (emphasis omitted), *aff'd*, 887 F.2d 1080 (4th Cir.1989); *Jennings Water, Inc. v. City of North Vernon*, 682 F.Supp. 421, 425 (S.D. Ind.1988) (describing § 1926(b)'s prohibition on limiting service to rural residents as "unequivocal"), *aff'd*, 895 F.2d 311 (7th Cir.1989).

### b.

Most of the cases arising under § 1926(b) have involved a municipality's attempt to encroach on a rural water association's area of service. Courts have uniformly understood the section as forbidding such encroachment, concluding that § 1926(b) "should be given a liberal interpretation that protects rural water associations indebted to the FmHA from municipal encroachment." *Jennings Water*, 895 F.2d at 315 (citing *Glenpool Utility Ser-*

*vices Auth. v. Creek Cty. Rural Water Dist. No. 2,* 861 F.2d 1211, 1214 (10th Cir.1988), *cert. denied,* 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989); *City of Madison v. Bear Creek Water Ass'n,* 816 F.2d 1057 (5th Cir.1987); *Pinehurst Enters.,* 690 F.Supp. at 444; *Moore Bayou Water Ass'n v. Town of Jonestown,* 628 F.Supp. 1367 (N.D. Miss. 1986); *Rural Dist. No. 3 v. Owasso Utilities Auth.,* 530 F.Supp. 818 (N.D. Okla.1979)). The *Jennings Water* court, for example, held that "[t]he statute explicitly prohibits municipal encroachment on a rural water association's service area by means of annexation or grant of private franchise." *Id.* at 314; *see also Glenpool Utility Auth.,* 861 F.2d at 1214 (same); *Bear Creek,* 816 F.2d at 1059 (same).

From these cases, the district court reasoned that, under a broad reading of § 1926(b), the statute was "intended to insure water service to rural residents free from obligations imposed by municipalities that are not directly associated with the cost of that service." J.A. at 128. This is especially true of obligations pertaining to annexation. *Id.*

▇ Defendants criticize this reasoning, contending that §§ 1926(a)(7) and (a)(13) "clearly and expressly contemplate that water facility loans will be provided *for the benefit of municipal residents of small towns.* Nothing is said about any extraterritorial users of such municipal water systems." Defendants' Br. at 42. This argument is based upon the statute's reference to residents of a "rural community." However, we reject Defendants' presumption that one who lives just outside of the border of a village proper is not a member of the "rural community" that also encompasses the village. The word "community" conveys a meaning broader than the phrase "resident of a municipality." We hold that anyone residing about and around a village may be regarded as a member of the same general community within the meaning of the statute. *Cf.* § 1926(a)(7) (defining "rural area").

Defendants also argue that the Consolidated Farm and Rural Development Act does not give rise to a private right of action. Defendants cite *Smith v. Dearborn Fin. Services* for the proposition that "federal regulations cannot themselves create a cause of action.... That authority lies solely with Congress." 982 F.2d 976, 979 (6th Cir.1993) (citing *Stewart v. Bernstein,* 769 F.2d 1088, 1092–93 n. 6 (5th Cir.1985); *Marshall v. Gibson's Prods., Inc. of Plano,* 584 F.2d 668, 677–78 & n. 16 (5th Cir.1979)).

▇ These cases are inapposite and the argument is meritless. First, 7 C.F.R. § 1942.17(n)(2)(vii) provides that an applicant for FmHA funds must *agree,* as a condition of receiving funds, that a person within the service area who can feasibly and legally receive water service has a direct private right of action against the fund recipient if the recipient fails to make adequate service available. Sebring did so agree. Thus, the private right of action was created, not by the federal regulation, but by the municipal body itself, pursuant to local ordinance.[6]

▇ More importantly, Plaintiffs have a private right of action under § 1983, which provides a private cause of action for "the deprivations of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Defendants' claims to the contrary notwithstanding, *Smith* is concerned only with a direct private right of action, and not with a right of action pursuant to § 1983. Ever since *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980), the Supreme Court has held that § 1983 provides a private cause of action for violations of federal statutes as well as the Constitution. The coverage of § 1983 is to be "broadly construed." *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 105, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989). The Court has recognized only two exceptions under which statutory violations are not actionable:

---

**6.** Of course, a local ordinance cannot give rise to federal question jurisdiction; thus, were this ordinance the only source of the private right of action, the action would not lie in federal court. However, in the present case, in which Plaintiffs allege due process violations and a § 1983 cause of action, the federal courts have supplemental jurisdiction, formerly known as pendent jurisdiction, over the right of action created by local ordinance. *See* 28 U.S.C. § 1367(a).

A plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 unless (1) "the statute does not create enforceable rights, privileges, or immunities within the meaning of § 1983," or (2) "Congress has foreclosed such enforcement of the statute in the enactment itself."

*Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (quoting *Wright v. Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)).

■ To determine whether the first of these two exceptions applies, the Court has developed a three part test:

(1) Was the provision in question intended to benefit the plaintiff?

(2) Does the statutory provision in question create binding obligations on the defendant governmental unit, rather than merely expressing a congressional preference?

and (3) Is the interest the plaintiff asserts specific enough to be enforced judicially, rather than being "vague and amorphous"?

*Wilder,* 496 U.S. at 509, 110 S.Ct. at 2517; *Golden State,* 493 U.S. at 106, 110 S.Ct. at 448. The plaintiff bears the burden of proof for showing that this exception does not apply. *Golden State,* 493 U.S. at 106, 110 S.Ct. at 448.

■ As for the second of the two exceptions, the only way Congress forecloses § 1983 enforcement is by "providing a comprehensive enforcement mechanism for protection of a federal right." *Id.* Mere availability of administrative protections is not sufficient. *Id.* "Rather, the statutory framework must be such that allowing a plaintiff to bring a § 1983 action would be inconsistent with Congress' carefully tailored scheme." *Id.* at 107, 110 S.Ct. at 449. "We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right." *Id.* (quoting *Wright,* 479 U.S. at 423–24, 107 S.Ct. at 770–71). The defendant bears the burden of proof for showing that this exception applies. *Id.*

■ Neither of the two exceptions apply to § 1926(b). The overwhelming weight of authority is that the purpose of the statute is to protect rural water service users access to clean, safe water. The language of the provision is mandatory, making it binding on municipalities. The interest that the statute protects is judicially enforceable. And Congress provided no enforcement mechanism for protecting the right that § 1926(b) creates. Thus, pursuant to § 1983, § 1926(b) gives rise to a private right of action on the part of rural water service users.

**4.**

For the foregoing reasons, at least two of the three rationales offered by the district court in support of its directed verdict are correct. We therefore affirm the court's directed verdict in favor of Plaintiffs, and its denial of Defendants' motions for judgment as a matter of law. Defendants offer no additional arguments in support of their contention that the lower court should have granted their motion for a new trial. It follows that the district court did not abuse its discretion when it denied this motion.

**B. Jury Instructions on Damages**

■ In reviewing a district court's jury instructions, we will reverse "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 72–73 (6th Cir.1990). Defendants contend that violations of the Loan Resolution and the Consolidated Farm and Rural Development Act sound in contract rather than in tort. They cite no authority for this proposition. From this premise, it would follow that the district court erred by instructing the jury that damages should compensate Plaintiffs for discomfort and annoyance attributable to Defendants' conduct. This argument is meritless, however, for it is well settled that a prevailing § 1983 plaintiff, like a prevailing party in a common law tort action, can recover for any compensable injury caused by the defendants' breach of duty.

*See Carey v. Piphus,* 435 U.S. 247, 254–57, 98 S.Ct. 1042, 1047–49, 55 L.Ed.2d 252 (1978).

## C. Discovery

■ "In reviewing the District Court's decision to limit discovery, this Court will intervene only if it was an abuse of discretion resulting in substantial prejudice." *Elvis Presley Enters. v. Elvisly Yours, Inc.,* 936 F.2d 889, 893 (6th Cir.1991). Defendants contend that the district court improperly curtailed their right to discovery. Defendants failed to take depositions before the district court's discovery cut-off date. They contend that during this period they had a summary judgment motion pending based on legislative or qualified immunity, and that, during the pendency of such motions, discovery should not be allowed. Defendants' Br. at 48–49 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The problem with this argument is that the Village itself did not move, and could not have moved, for dismissal on this basis; therefore it should have proceeded with discovery during the assigned discovery period. Thus, the district court's denial of Defendants' motions to conduct additional discovery after the cut-off date was not an abuse of discretion.

## D. Attorney Fees for the Individual Defendants

■ Although a prevailing § 1983 *plaintiff* is entitled, under 42 U.S.C. § 1988, to recover his reasonable attorney fees, a prevailing *defendant* should only recover upon a finding by the district court that "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (quoting *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978)); *Tarter v. Raybuck,* 742 F.2d 977, 985 (6th Cir. 1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985). The Supreme Court has instructed district courts considering prevailing defendants' applications for attorney fees to "resist the understandable temptation to engage in *post hoc* reasoning

by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg,* 434 U.S. at 421–22, 98 S.Ct. at 700. The decision is committed to the discretion of the trial judge, and is reviewed only for abuse of discretion. *Tarter,* 742 F.2d at 986.

■ The individual defendants, who won summary judgment on the basis of qualified immunity, contend that they should have recovered attorney fees. They maintain that Plaintiffs knew or should have known that this cause of action was novel and that their rights were not yet clearly established. However, as the district court acknowledged, J.A. at 147–48, Plaintiffs also sued the individual defendants for injunctive relief, which was not barred by qualified immunity. The request for injunctive relief was obviously neither frivolous nor groundless. Thus, the court did not abuse its discretion in denying the individual defendants' application for fees.

## E. Summary Judgment in Favor of Individual Defendants

Plaintiffs' first issue on cross-appeal is the court's grant of summary judgment in favor of the individual village officials on the basis of qualified immunity.

> We review a district court's grant of summary judgment *de novo.* ... [I]n a motion for summary judgment, 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'

*Russo v. City of Cincinnati,* 953 F.2d 1036, 1041–42 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986), and citing *Vollrath v. Georgia–Pacific Corp.,* 899 F.2d 533, 534 (6th Cir.), *cert. denied,* 498 U.S. 940, 111 S.Ct. 345, 112 L.Ed.2d 310 (1990); *Curry v. Vanguard Ins. Co.,* 923 F.2d 484, 485 (6th Cir.1991)).

■ "A public official is entitled to qualified immunity for conduct in performing dis-

cretionary functions so long as that conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known." *Wegener v. City of Covington,* 933 F.2d 390, 392 (6th Cir.1991) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "To find that a clearly established right exists, the district court must find binding precedent by the Supreme Court, this court, the highest court in the state in which the action arose, or itself, so holding." *Id.* The application of qualified immunity is a purely legal question to be reviewed *de novo. Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332, 339 (6th Cir.1990).

■ Plaintiffs contend that the district court erred in finding that, back in 1991, a reasonable official could have believed that Plaintiffs were not entitled to continued water service. Plaintiffs cite to the letters from FmHA and GECC informing Defendants of their obligations. However, letters from an administrative agency and a private corporation do not constitute "binding precedent by the Supreme Court, this court, the highest court in the state in which the action arose, or itself." *Wegener,* 933 F.2d at 392. Thus, they do not suffice to clearly establish the right in question.

### F. Breadth of Injunction

■ Plaintiffs contend that the district court erred in failing to extend the injunction to protect customers of Sebring's sewer service. The Rouses requested this relief in the complaint, at trial, and by post-judgment motion. However, the court below did not address this request at all.

■ The decision to grant a permanent injunction "is within the judicial discretion of the District Judge." *Clemons v. Bd. of Educ.,* 228 F.2d 853, 857 (6th Cir.1956); *accord id.* at 859 (Stewart, J., concurring); *id.* at 860 (Miller, J., dissenting). This implies that we review only for abuse of discretion. Nevertheless, although the court below had discretion regarding whether to grant a broader injunction or not, it abused this discretion when it failed to address the issue at all. *Cf. Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) ("The

grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion."); *Glover v. Johnson,* 855 F.2d 277, 284 (6th Cir.1988) (holding that, with regard to preliminary injunction, a district court abuses its discretion if it fails to make specific findings regarding the various factors it is required to consider).

Plaintiffs briefed the merits of their sewer service claim at length and ask us to extend the injunction ourselves. Although we are sympathetic with Plaintiffs' position that the Rouse's are entitled to relief with regard to sewer service for the very same reasons that the other plaintiffs are so entitled with regard to water service, we believe that the district court should be the one to address Plaintiffs' arguments in the first instance.

### G. Plaintiffs' Attorney Fees Award

■ A prevailing § 1983 plaintiff is entitled to recover his or her reasonable attorney fees. 42 U.S.C. § 1988; *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). When considering a petition for attorney fees, a court must first determine whether the petitioning plaintiff was the prevailing party. *Id.* at 433, 103 S.Ct. at 1939. The next step is to determine what fee is "reasonable." *Id.* A starting point is to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* (This is known as the "lodestar" calculation.) The court should then exclude excessive, redundant, or otherwise unnecessary hours. *Id.* at 434, 103 S.Ct. at 1939–40. Next, the resulting sum should be adjusted to reflect the "result obtained." This involves two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.*

■ An appellate court reviews a district court's application of *Hensley's* step-by-

step analysis for abuse of discretion. *Id.* at 437, 103 S.Ct. at 1941. However,

> This Circuit has set up a three-tier review standard for determining the reasonableness of the requested hours billed by a prevailing party. We apply a clearly erroneous standard when reviewing a district court's determination that a prevailing party has or has not worked the hours the party claims to have worked. We determine whether the District Court erred when reviewing legal questions concerning the relationship of the hours billed to the points on which the party prevailed. We look to see whether the District Court has misapplied the reasonable practices of the profession when determining whether a party used poor judgment in billing the opposing party for hours spent on the case.

*Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1176 (6th Cir.1990).

### 1. Number of Hours

The district court reduced the number of hours that Plaintiffs claimed to have spent on this case for three separate reasons. First, it held that some of the hours claimed were excessive. Second, it held that some of the hours claimed were duplicative. Third, it held that some of the hours claimed were spent on unsuccessful claims against dismissed defendants. J.A. at 141–43.

 The lower court's determination that an indefinite number of the hours claimed by Plaintiffs are excessive or duplicative is a finding of fact, which is to be affirmed unless clearly erroneous. *Wooldridge*, 898 F.2d at 1176. Plaintiffs have not come close to showing clear error with regard to this finding. They correctly point out that the time spent seeking alternative dispute resolution, settlement, a TRO, as well as the time spent traveling, is fully compensable, *see, e.g., Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir.1991), but the district court did not hold to the contrary. Rather, the court excluded an undefined amount of Plaintiffs' counsels' claimed time because, based on its experience, it believed the attorneys exaggerated or duplicated the amount of the time they actually spent.

██ However, the lower court erred as a matter of law in rejecting some of the hours claimed on the ground that they must have been spent on unsuccessful claims against dismissed defendants. The Supreme Court has instructed that, where "the plaintiff's claims for relief . . . involve a common core of facts or [are] based on related legal theories":

> Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim by claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation. . . . In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.

In the present case, there is only one common core of facts implicating both Sebring and the individual defendants who prevailed on summary judgment. No separate issues were raised against the prevailing defendants that were not raised against Sebring itself. This suit is not "a series of discrete claims." Further, Plaintiffs (with the possible exception of the Rouses) have achieved excellent results: they received both the injunction and the damages that they sought. On remand, it is possible that the Rouses, too, will achieve excellent results. Under *Hensley*, it follows that Plaintiffs' claim for attorney fees should not be reduced simply because some indeterminate amount of time was expended on the prevailing individual defendants.

The lower court did not make it at all clear how much of the time it disallowed was attributed to excessiveness or duplication, and how much was attributed to its theory of limited success. This was an error. *Wooldridge*, 898 F.2d at 1176 ("A district court should state with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why."). Therefore remand is necessary in order for the court to clarify which of Plaintiffs' counsels' claimed hours are disallowed due to excessiveness or duplication. On remand, the lower court is instructed to award all of the non-excessive, non-duplicative hours claimed by Plaintiffs, undiminished by any theory of "limited success" attributable to time spent on the prevailing defendants. If it turns out that the Rouses do not prevail in their request for a broader injunction, then the court is allowed to reduce the fee award by the time spent exclusively researching the sewer service issue.

### 2. Hourly Rate

A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney. *Louisville Black Police Officers Organization v. City of Louisville*, 700 F.2d 268, 277–78 (6th Cir. 1983). Plaintiffs' two attorneys asked for $145 and $110 per hour, respectively. The lower court felt that this amount was too much based on the attorneys' experience, their performance in court, the complexity of the issues, the novelty of the case, and the prevailing market rate. It found that an appropriate rate was $100 for out-of-court work, and $125 for in-court work.

Plaintiffs contend that the court should have considered the prevailing market rates for the attorneys' home practice, insofar as no local counsel was willing to take the case. Sixth Circuit precedent, however, provides that, under these circumstances, it is not an abuse of discretion for a court to apply local market rates. *Louisville Black Police Officers*, 700 F.2d at 277–78.

Plaintiffs also contend that the lower court should not have awarded a lower rate for out-of-court work, but according to

*Louisville Black Police Officers*, this two-tiered approach is legitimate. *Id.* at 273.

### III. Conclusion

For the foregoing reasons, we affirm the district court's directed verdict in favor of Plaintiffs on the issue of liability, its denial of Defendants' motions for judgment as a matter of law and for a new trial, its jury instructions, its decision to limit discovery, its denial of the prevailing Defendants' request for attorney fees, and its grant of summary judgment in favor of the individual defendants. We remand the issue of whether the injunction should encompass sewer service for initial consideration by the lower court. Finally, we reverse the court's award of Plaintiffs' attorney fees, and remand for a determination of which of Plaintiffs' counsels' claimed hours are excessive or duplicative.